JOHN McRAE v. WILMINGTON AND WELDON RAILROAD
COMPANY.

*Railroads—Excursion Trains—Contract—Judge's Charge.*

1. Railroad companies can make reasonable regulations for the management of trains.

2. The purchaser of a ticket is bound to inform himself of such regulations, and must conform to the custom of the road in transporting passengers.

3. A regulation that persons purchasing tickets for an excursion shall travel upon the train provided for that special purpose, and not upon a regular train, is a reasonable regulation.

4. The managers of an excursion from Wilmington to Washington contracted with the defendant company for a train of cars at a certain sum, and after advertising the time, &c., sold card-tickets at $6.50 for the round trip; after the departure of the train and when it had proceeded a few miles, the defendant's conductor passed through the cars and took up the card-tickets, and in lieu thereof gave coupon-tickets in order that the connecting roads might hold vouchers to obtain their *pro rata* share of the excursion money, in settling with the defendant; *Held*, that this did not change the original contract with the managers.

5. The terms of the contract, contained in the coupon-ticket, did not confer the right upon the plaintiff excursionist to return on a regular train, even at an earlier day than that advertised for the excursion, without paying the regular fare.

6. In a suit by the plaintiff against the company to recover damages for an assault by the conductor who attempted to put him off a regular train unless the fare was paid, the plaintiff testifying among other things that he supposed he had the right to return on any train after the delivery of the coupon-ticket, but was compelled to pay additional fare for such privilege, *it was held* error in the court to charge the jury that they might consider the understanding and agreement of the parties in determining the character of such ticket—there being no evidence of any agreement between the plaintiff and defendant.

7. *Brunhild* v. *Freeman*, 77 N. C., 128, to the effect, that the construction of a contract depends upon what both parties *agreed*, not upon what either *thought*, approved.

CIVIL ACTION tried at Fall Term, 1882, of NEW HANOVER Superior Court, before *MacRae, J.*

The plaintiff brought this action to recover damages for an assault and battery, alleged to have been committed on him by E. D. Browning, a conductor on one of the defendant's trains, and the jury returned a verdict assessing the plaintiff's damages at $1,000.

Some time before the 13th of June, 1881, one W. H. Howe and Anthony Maultsby contracted with the defendant company, at a fixed sum, to furnish them a train of cars for an excursion from Wilmington to Washington City and return. The excursion was advertised by them on printed cards as follows:

"GRAND EXCURSION—WILMINGTON TO WASHINGTON CITY AND RETURN—MONDAY, JUNE 13TH, 1881."

"There will be an excursion from Wilmington to Washington City and return, leaving Front street depot at three o'clock P. M., Monday, June 13th, arriving in Washington Tuesday morning at ten o'clock. Returning, leave Washington Thursday morning at five o'clock and arrive in Wilmington Thursday night at twelve o'clock. Rates of fare, round trip, from Wilmington to Washington and return, $6.50." (Also giving rates from intermediate points, and other details not material to the case).

Tickets were issued for the trip in the following form: "Grand excursion from Wilmington to Washington and return—Monday, June 13th, 1881." (Signed by Howe & Maultsby, Managers, and endorsed by Howe).

One of these tickets was purchased by the plaintiff at the published rate of $6.50, less than one-fourth of the regular fare for round trip from Wilmington to Washington, and he took his seat in the cars on the said Monday. When the train had passed Smith's creek, about two miles from Wilmington, the conductor went through the cars, taking up the tickets issued by the said managers, and gave in lieu thereof tickets in the following from:

[326] First Class—Washington and return—Form Special—Wilmington & Weldon Railroad Company—Special limited excursion ticket—Good for one first-class passage to Washington and return, subject to the following contract: "Having purchased this ticket at a reduced rate, I do, in consideration thereof, agree to be bound by and comply with the following conditions in respect thereto : The trip from point of sale hereof to point of destination shall be made within one day from the date of issue stamped hereon. The return from point of departure to point of destination shall be made within one day from date of such departure. This ticket and the check attached are not assignable, and will be good only in the hands and for the transportation of the original purchaser. This ticket and all checks attached shall be used in conformity to the above conditions between June 13th and 17th, 1881, and in any event shall be void on and after June 18th, 1881. This ticket and check attached shall be void unless the foregoing conditions are complied with. This ticket is void unless stamped and dated. In selling this ticket for passage over other roads, this company acts only as agent, and assumes no responsibility beyond its own line. This company assumes no risk on baggage except for wearing apparel, and limits its responsibility to one hundred dollars in value; all baggage exceeding that value will be at the risk of the owner, unless taken by special contract. The checks belonging to this ticket will be void if detached."

The tickets were stamped and dated, and had coupons or checks attached.

There were five different connecting roads between Wilmington and Washington, and each road had its own conductor on the excursion train. The defendant's conductor went no further than Weldon. The reason why the coupon-tickets were issued in lieu of the cards issued by Howe and Maultsby, was merely that the roads beyond Weldon might have vouchers or checks to show the amount of the excursion money due to each, in settling with the defendant. There was at that time a regulation of the

defendant that persons purchasing tickets for an excursion should return by that train, and no other. These regulations were in manuscript and were issued to the assistants of the general passenger agent, and there was no other publication of them, except that the handbills for every excursion contains the time of departure and arrival of the train.

The foregoing facts were elicited from the examination of the witnesses on either side, and are uncontradicted.

In addition thereto, the plaintiff testified that in returning from Washington he was permitted to travel on all the roads from Washington to Weldon on the coupons of the ticket, without paying additional fare. At Petersburg, he heard some one, whom he supposed to be an agent, announce that those who had excurston tickets would have to pay their fare to Wilmington, but the conductor said he would take the coupons, and he did take them. This was objected to but allowed, and defendant excepted. When he got to Weldon, he took his seat in the defendant's regular passenger train for Wilmington. Browning, the conductor, stated that those who had excursion tickets must pay their fare, or get out. He showed the conductor his ticket at Weldon. When the train reached Halifax, the conductor showed him a telegram from one Sanders, and peremptorily ordered him to get off the train or pay his fare to Wilmington. He told him he would do neither, and the conductor then said he would put him off. The witness said, "Be sure you are right, for there will be trouble." The conductor then took him by the arm with both hands; he braced himself against the car; conductor jerked him from the window and called in two negroes; he then paid his fare; Browning seemed to be laughing and chuckling with the passengers, which made the witness feel very badly; he paid the fare because the conductor would have put him off if he had not paid; conductor looked pale, but did not curse or swear, and has remained ever since in the employment of the company.

The plaintiff also stated that he thought he had seen the handbills before leaving Wilmington, and knew that the fare from

Wilmington to Washington and return, on the regular train, was much more than $6.50, and when he left he did not expect he would be able to return on any other than the excursion train; but when he received the excursion ticket he thought he could return at any time. He expected to pay his fare on all the roads between Washington and Weldon, but did not expect to pay between Weldon and Wilmington, because the defendant had issued the ticket. None of the excursionists but himself returned to Wilmington by the train he was on. Some went as far as Halifax, but got off there. He said he did not hear it announced on the cars that the excursionists would have to return on the excursion train.

Howe, one of the managers, testified, on behalf of defendant, that he went through the cars with the conductor as he issued the coupon-tickets, and took up the cards and told the passengers they would have to return on that train, and no other. He made the announcement in each car, but did not know that the plaintiff heard it.

Maultsby, the partner of Howe, testified that he, too, went through the cars with the conductor, and, when asked if the tickets were good to return by any other train, replied that they were issued for that train only, and he could not tell about any other train, and the plaintiff was near by when the announcement was made.

Edens, a passenger on the train, testified that when Maultsby or Howe came through the cars and issued the tickets, he said they would have to return on that train, and it was spoken loud enough to be heard by everybody in the car, and plaintiff was sitting about three feet from him.

Browning, the conductor, testified that on the day the excursion train arrived at Weldon from Washington, he went on his train and announced that all who had excursion tickets would have to pay their fare, or get off the train, and that plaintiff said, "I had better carry him." He told him he had no authority to carry him on that ticket, but he would telegraph to the authorities of

McRae *v.* R. R. Co.

the road for further instructions. When the train reached Halifax, he received a telegram in reply and showed it to plaintiff, and told him he would have to pay his fare. He said he would not do it, and the witness told him he would have to put him off the train, and the plaintiff said "I would have to put him off by force." He had a stick in his hand, and the witness took him by the wrist and told him he would have to get off or pay, and the plaintiff jerked his hand back and said he would pay the fare. Witness was not angry, and testifies this was all he did; he did say to the plaintiff he had train-hands to help him put him off, but did not call them. Several negroes came into the car. He stated that the company's order to him was to make every person, who had not a proper ticket, pay fare or get off the train. He had been conductor on defendant's road for twenty-five years.

Judgment for plaintiff; appeal by defendant. The instructions to the jury are sufficiently stated in the opinion.

*Messrs. McRae & Strange,* for plaintiff.
*Mr. George Davis,* for defendant.

ASHE, J.   Howe and Maultsby contracted with the defendant for the use of its train for an excursion from Wilmington to Washington and return. They were the managers of the excursion. The excursion was advertised in handbills, over their signatures, to leave Wilmington on the 13th of June, and return on the 17th, and tickets, called cards, were issued by them at the reduced price of $6.50, being less than one-fourth of the price of the regular fare from Wilmington to Washington and back. The plaintiff purchased one of these tickets. They were sold to him by Howe and Maultsby, the managers of the excursion. The contract was with them, and not with the defendant, for a seat in the excursion train for the round trip from Wilmington to Washington.

The only question for our consideration is: did the plaintiff have a right to a seat upon the regular train of the defendant?

Railroads have the power to make reasonable regulations for the management of their trains (1 Red. on Railways, 98; Thompson's Carriers, 306), and with the same qualification of reasonableness, it is also well settled, that one who buys a ticket is bound to inform himself of the rules and regulations of the company governing the transit and conduct of its trains. *Deitrich* v. *R. R. Co.*, 71 Penn. St. Rep., 432. It follows that where a passenger purchases a ticket, he only acquires the right to be carried according to the custom of the road. When he purchases such a ticket, he should inform himself as to the usual mode of travel on the road; and so far as the customary mode of carrying passengers is reasonable, he should conform to it. The requisite information can always be obtained from the agent from whom the ticket is procured; and it is but reasonable to require passengers to obtain the information and to act upon it. *R. R. Co.* v. *Randolph*, 53 Ill., 515.

The evidence shows that at the time of this excursion there was a regulation of the defendant company that persons purchasing tickets for an excursion train should return by that train, and no other; and the regulation is reasonable. For if several hundred passengers on an excursion train could leave that train at any point and take seats in a regular train, it would produce great discomfort to the proper passengers, and intolerable confusion and inconvenience.

The regulation was proclaimed throughout the cars, and in three feet of the plaintiff; and, although he says he did not hear it, it was his business to inquire. But he did have notice, for he admits in his testimony that he had seen the handbills advertising the excursion before he purchased his ticket from the managers. It was subject to this regulation that he made the contract with the managers, and when the ticket, or card, was paid for and received by the plaintiff, the contract between them was consummated, and the rights of the parties were then determined. *Raw-*

son v. *R. R. Co.*, 48 N. Y., 212. Most unquestionably, this contract did not give the plaintiff the right to a seat on the regular train.

The plaintiff insists the contract was changed by the defendant after leaving Wilmington, when its agent, the conductor, took up the card and substituted in its place the coupon-ticket. He admits when he received the ticket from Howe and Maultsby that he had no idea but that he would have to return on the excursion train, but that after receiving the coupon-ticket from the defendant's conductor, he concluded he would have the right to travel upon a regular train of the defendant, but not upon those of the other roads. In other words, that he and the several hundred excursionists, who had purchased tickets at the reduced price of $6.50, were entitled to travel on any of the regular trains of the defendant between Wilmington and Weldon.

The conclusion of the plaintiff is so preposterous, in a business point of view, that it is not surprising that he alone, of all the passengers on the excursion train, should have been the only one who asserted such a right under that construction of the ticket. But the jury, upon the issues submitted under the instructions of the court, seem to have come to a like conclusion.

The question, then, is: was there error in the instructions given to the jury?

The defendant requested the court to submit this issue to the jury: "Was the coupon-ticket issued without any intention of changing the contract between the parties?" The purpose, it seems to us, for which the coupon-tickets were issued by the defendant was a material inquiry; and the intent with which they were issued should have been submitted to the jury as a question of fact to be determined by them. But the court refused to submit the issue, and in lieu thereof submitted the following: "Did the plaintiff have a ticket which authorized him to occupy a seat in a regular train, as alleged in the complaint?" and upon this His Honor charged the jury, that if the plaintiff accepted the coupon-ticket from the agent of the defendant company with

the *understanding and agreement* that it was only to be used upon the excursion tain, and he returned upon another train than that provided for the excursion party, the company would have had the right to demand pay for carrying him upon the other train, "and you should say in response to that issue, no;" but if the plaintiff did not accept the ticket upon this condition, that he was to return on the excursion train, and no other, "you should respond to the issue, yes."

We are of opinion there is error in this instruction. The error consists in leaving it to the jury to consider the understanding and agreement of the parties in determining the character and effect of the coupon-ticket. The understanding of the parties amounted to nothing unless it was mutual and concurrent, and there was no evidence of such a mutual understanding. The defendant understood the ticket as only carrying out the original contract, and issued in lieu of the card only for the purpose, as testified by one of its agents, that the roads beyond Weldon might have vouchers or checks to show the amount of the excursion money due to each, in settling with the defendant. The plaintiff says, on the other hand, that he understood the ticket as giving him the right to ride upon any train of the defendant.

The construction of a contract does not depend upon what either party *thought*, but upon what both *agreed*. *Brunhild* v. *Freeman*, 77 N. C., 128.

The question then arises, was there an agreement between the parties that the coupon-tickets were to be used on the excursion train only, or upon any other train of the defendant? There was no actual agreement, and none can be inferred from the tickets itelf. There is not a word in it about the right or authority to use it on a regular train. So far from that, it bears internal evidence that it was to be used on the excursion train, and no other. It is headed, "First-class, Washington and return, form special, Wilmington & Weldon railroad company, special limited excurson ticket."

We are unable to conceive how any one could suppose that

such a ticket, delivered as it was, on a special excursion train, to a passenger, who had purchased a ticket at a greatly reduced price, with full knowledge that it was to be used on that train only, could give him the right to travel on any other train of the defendant. It could have reference only to the moving special train, upon any reasonable interpretation.

But the plaintiff contends that the contract, contained in the ticket, extended the plaintiff's right to return on the 18th day of June, and as the excursion train, by the contract between the defendant and managers, must return on the 17th, it follows that if he should see proper to defer his return until the 18th, he would have the right to travel on a regular train, and that if it gave him the authority to do so, on that day, it must equally confer the right to do so on the 16th of June. But we cannot concur in that interpretation. The language of the ticket is: "This ticket and all checks attached shall be used in conformity to the above conditions, between June the 13th and June the 17th, 1881, and in any event shall be void *on* and after June the 18th, 1881." The time for the return of the excursion train by the original contract, as well as by the terms of the coupon-ticket, is limited to the 17th of June; and what is added, "in any event shall be void *on* and .after June the 18th, 1881," was used to make the limitation to the 17th the more definite—that is, that it should be void on the 18th; as a matter of course it would be void after that date.

The evidence in the case is, that the coupon-ticket was given solely for the purpose of carrying out the original contract between the defendant and the managers, and was no evidence of a change in that contract. His Honor should, therefore, have instructed the jury that there was no evidece of an understanding and agreement between the plaintiff and the defendant, that the plaintiff might ride on any train of the defendant, except that provided specially for the excursion; and that even if there was such an agreement, it was without consideration. His failure to so instruct the jury is error.

Under this view of the case, it is unnecessary to consider the question of damages, or the other exceptions taken. There must be a new trial. Let this be certified, &c.

Error.                                           *Venire de novo.*