## 7693

### DesPORTES v. SOUTHERN RY.

1. Railroads—Passengers—Mileage Books.—Under the conditions printed on the mileage book held by plaintiff, and the regulation on the time table used by him it was his duty to have made an effort to exchange mileage coupons for a passage ticket at an agency station at which the train he was then on stopped for twenty-five minutes and under the evidence the carrier is not liable for ejecting him for not obtaining such ticket.

2. Words and Phrases.—The word "impracticable" used in the condition and regulation defined.

Before W. B. Gruber, Special Judge, October, 1909. Reversed.

Action by John A. DesPortes against Southern Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Harley & Best,* for appellant, cite: *Plaintiff is bound by his contract:* 26 S. C. 96; Lawson on Car. sec. 102; 32 Am. Dec. 506; 62 S. C. 1; 72 S. C. 361; 17 Am. St. R. 415; 12 L. R. A. 823; Hutch. on Car. sec. 568, 580a, 580b; 81 Mich. 364; Fetter on Car. secs. 284, 289; 127 U. S. 390; 132 U. S. 146; 67 S. C. 268; 173 U. S. 684. *Punitive damages not recoverable:* 69 S. C. 444. *Plaintiff should minimize damages:* 75 S. C. 355.

*Messrs. G. Duncan Bellinger, W. H. Townsend* and *R. C. Holman,* contra, cite: *That there was no evidence to sup-*

*port cause of action must be raised by motion for nonsuit or direction of verdict:* Rule 77 C. C.; 75 S. C. 571. *Meaning of "practicable" and "impracticable":* 81 N. E. 487; 18 Atl. 45; 42 Cal. 245; 54 Tex. 294; 16 Atl. 607; 16 S. E. 352: *Train sheet not evidence of facts stated:* 77 Ind. 110; 63 S. C. 572; 74 S. C. 337; 4 McC. 76; 75 Fed. 866; Wig. on Ev. secs. 1074, 1518; 18 Wall. 516.

October 22, 1910. The opinion of the Court was delivered by

Mr. Chief Justice Jones. The plaintiff brought this action to recover actual and punitive damages for an alleged unlawful and wanton expulsion from defendant's train at Reynolds, S. C., on November 11, 1908.

Plaintiff is a traveling salesman and had purchased from defendant at Columbia, S. C., a thousand mile interchangeable mileage book or ticket, good for passage over defendant's line upon compliance with conditions.

On November 11, 1908, plaintiff boarded defendant's train at Denmark, S. C., having exchanged coupons for a ticket to Blackville, S. C., but about the time the train arrived at Blackville plaintiff decided to go to Williston, S. C., ten miles further, on the same train, and kept his seat on the train.

Blackville is an agency station and on this occasion the train remained there waiting on connection about twenty-five minutes. Plaintiff made no inquiry and made no effort to exchange his mileage coupons for a ticket, thinking the train would leave at any minute according to its schedule and thinking he had the right to tender his mileage book for fare on train. After the train left Blackville the conductor requested plaintiff to pay his fare and plaintiff tendered his mileage book but the conductor declined to accept same and demanded that he pay the regular fare. The plaintiff was supplied with money but refused to tender anything but the mileage book. The fare to Williston was twenty-five cents.

The conductor appealed to plaintiff not to give him any trouble but informed him that he would have to pay his fare or leave the train. Upon plaintiff's refusal to do either, he was removed from the train at the next station, Reynolds, S. C., without rudeness, insult or injury and with only such force as was necessary. After his removal at Reynolds, which is a non-agency station, the conductor informed plaintiff that he would accept his mileage coupons for fare but plaintiff declined to get back upon the train. Plaintiff was furnished a conveyance by his friends but was subjected to a few hours' delay and loss of time and he testified that he was humiliated by the expulsion. The jury rendered verdict for five hundred dollars in favor of plaintiff.

There are a number of exceptions to the refusal of nonsuit, to the charge and to refusal of new trial, but they mainly depend upon the question whether there was any evidence of any negligent or wilful breach of duty by defendant. The plaintiff's case depends upon whether it was the duty of the conductor to accept tender of the mileage coupons for fare under the circumstances.

The Court, Hon. W. B. Gruber, Special Judge, instructed the jury in substance that if Blackville was an agency station and it was practicable by the exercise of reasonable care under the circumstances for plaintiff to have exchanged his mileage coupons for a ticket, it was not the duty of the conductor or ticket taker to accept the coupons and that upon refusal to pay the fare the agents of defendant had the right to expel him, using only so much force as was necessary, but that if it was impracticable by the exercise of reasonable care for plaintiff to make such exchange he had the right to be upon the train and to tender the coupons in payment of fare and that ejection under such circumstances would be an invasion of plaintiff's right.

The mileage book which gave transportation for less than the usual fare was accepted by plaintiff subject to certain conditions, one of which was: 6. "Regulations. Coupons

from this ticket will not be honored on trains or boats, nor in checking baggage (except from non-agency stations and agency stations not open for sale of tickets) but must be presented at ticket offices and there exchanged for continuous passage tickets, which continuous passage tickets will be honored in checking baggage and for passage when presented in connection with this mileage ticket. This ticket is subject to the exceptions, rules and regulations of each line over which it reads, with which exceptions, rules and regulations purchaser hereof must acquaint himself."

Upon defendant's time table introduced in evidence by plaintiff there was the following regulations: "*Mileage transportation to be exchanged at ticket office.* Especial attention is called to the arrangement whereby all forms of mileage transportation sold on or after April 1, 1908, are to be exchanged at ticket office for passage tickets except from stations where there are no agents or where the agent is not on duty or for any other valid reason, making it impracticable for the passenger to have his or her mileage exchanged for a passage ticket."

We agree with the Circuit Court that this regulation enters into the contract and warrants the tender on train of mileage coupons from a station "where there are no agents, or where the agent is not on duty, or for any other valid reason, making it impracticable for the passenger to have his or her mileage exchanged for a passage ticket." But we think there was no evidence in the case tending to show it was impracticable for plaintiff to have exchanged his mileage coupons for a passage ticket. On the contrary, plaintiff's own testimony is that he made no inquiry and made no effort whatever to make the exchange. It is not disputed that Blackville is an agency station and there was no evidence that the office was not open during the time the train remained there. The testimony for the defendant was that the office was open. The only reason given by plaintiff to the conductor why he did not make the exchange at the

ticket office was that he thought he had the right to use his mileage book on the train, and here is plaintiff's explanation on the witness stand:

"Why did not you get out of that car and get you a ticket? Well, because I believed that I had a right to stay on there and that they would pull my mileage. Were you familiar with that route? Yes, sir. What train was it? No. 35 from Blackville to Augusta. I believe you said you got that schedule for your guidance? Yes, sir; I carry one from each railroad. Please look at No. 35 and read the schedule from Blackville to Reynolds station. No. 35 is due at Blackville at 11 :35. What time at Reynolds? 11 :42. How many minutes? Seven. How many miles? Four. And you had that to guide you by? I certainly did. Was or was it not practicable for you with the lights before you and with that schedule before you to get off the train at Blackville and get a ticket? It was not. * * * How long did you stop in Blackville? Some minutes; I did not time the stop at all. It was some minutes? Yes, sir. What were you doing while it stopped at Blackville? Sitting in the train, I had no special work to do. You had no special work to do? No, sir. The depot at Blackville is always open, is it not? It is always open during the day, is it not? I have never been around the depot all day. When you have been around the depot it was always open? I have been there when it was closed. You always exchanged your mileage at Blackville when you boarded the train there? Yes, sir. You would not say this depot had not been open thirty minutes before the arrival of that train? No, sir, I do not know. You could not say? No, sir, I could not. And you say it was open on that morning when you got there,—when you arrived at Blackville? I did not say so. Your complaint does not say so? You did not inquire? No, sir. You made no effort to exchange your mileage for a ticket at Blackville? No, sir. You made no effort? No, sir, there was no reason for me to do it. * * * You testified.

on the direct examination that the reason you did not get off and get a ticket at Blackville was because you had a right to ride on your mileage? That is the only reason, and too because I did not think that I had time, nobody told me that the train would stay there that length of time. If I had been notified that I had time to get a ticket I could have possibly done so."

It will be noticed that the plaintiff does not testify even that he would have attempted to make the exchange if he had been informed of the length of time the train would stay there, he merely stated that he could possibly have done so if he had been informed. The fact that plaintiff thought he did not have time furnishes no sort of reason for non-compliance with his contract which excused him from making the exchange only when it was impracticable to do so. It was his duty to make necessary inquiry and effort to ascertain whether it was practicable. Had he informed the conductor of his situation and inquired whether there would be opportunity to make the exchange he would doubtless have found it quite practicable. Further, the testimony shows that plaintiff knew that the train would at least stop for several minutes on connections, as appears by his testimony:

"Did you not know at that time that this train made connection with the trains coming from Batesburg and one from Augusta? Yes, sir; I knew there were two trains due about that time. And you knew it was absolutely necessary for the train to wait there a few minutes on the train coming from Perry, and for them to exchange baggage from No. 35 to the train? Yes, sir. And you knew that the train on which you were a passenger made connection at Blackville? Yes, sir, it had seven minutes."

A thing is impracticable when it cannot be accomplished with available means. Impracticable is defined as incapable of being effected from lack of adequate means. 4 Words & Phrases, 3443.

As there was no evidence tending to show any breach of duty on the part of defendant, there was no basis for a judgment for either actual or punitive damages.

The judgment of the Circuit Court is reversed.