E. L. MASON v. SEABOARD AIR LINE RAILWAY COMPANY ET AL.

(Filed 28 May, 1912.)

1. Carriers of Passengers — Mileage Books — Exchange Tickets— Contracts—Conditions.

Railroad companies are under no legal obligation to sell mileage books at a less rate than that fixed for ordinary fare, and a sale of such books forms a contract between the railroad and purchaser which binds the latter to the condition that he exhibit to the conductor his mileage book, together with his exchange ticket, when riding as a passenger.

2. Same—Status of Passenger—Ejection from Train—Interpretation of Statutes.

When a purchaser of a mileage book from a railroad company is riding on an exchange ticket, and refuses, without excuse, to show his mileage book, in connection with the ticket, to the conductor on the train, he is not regarded as a passenger, and the conductor has the right to eject him from the train. Revisal, sec. 2629.

3. Carriers of Passengers — Mileage Books — Exchange Tickets— Contracts—Consideration.

When a passenger accepts a mileage book from the carrier at a reduced rate, and has been afforded an opportunity to pur-

chase the ordinary or usual ticket, he enters into a contract with the carrier different from that implied by law upon the purchaser of an ordinary ticket at full rate or fare, and is bound in such cases by the terms of the contract in consideration of the reduced price.

4. Carriers of Passengers — Mileage Books — Exchange Tickets— Contracts—Conditions—Knowledge.

A passenger who has purchased a mileage book from the carrier, and is riding on an exchange ticket, knowing the conditions thereon, is not excused from the fulfillment of a condition that he exhibit the mileage book to the conductor on the train, if demanded. The reasonableness of this condition discussed by BROWN, J.

5. Carriers of Passengers — Mileage Books — Exchange Tickets— Conditions—Conductor—Principal and Agent—Waiver.

*Semble,* it is not optional with the conductor on the train to waive the requirement that a purchaser of a mileage book, riding on an exchange ticket, exhibit the mileage book to him.

6. Carriers of Passengers — Mileage Books—Contracts—Retaining Exchange Ticket—Ejection—Damages.

The plaintiff, claiming damages in his action against the carrier for a wrongful ejection from the train on which he was riding, was shown not to have been a passenger, for the reason that he refused to comply with the condition of his ticket, exchanged for mileage, requiring him to show the mileage book to the conductor: *Held,* the fact that the conductor failed or refused to return to the plaintiff his exchange ticket did not entitle the plaintiff to his passage without complying with his contract.

HOKE, J., concurring; CLARK, C. J., and ALLEN, J., dissenting.

APPEAL from *Adams, J.,* at October Term, 1911, of MECK-LENBURG.

Civil action to recover damages for an alleged unlawful ejection of plaintiff from passenger train of the defendant.

This issue was submitted to the jury:

Was the plaintiff a passenger on the defendant's train, as alleged in the complaint? Answer: No.

There was a judgment for the defendant. The plaintiff excepted and appealed.

MASON *v.* R. R.

*Tillett & Guthrie, Stewart & McRae for the plaintiff.*
*Burwell & Cansler and R. S. Hutchison for the defendant.*

BROWN, J. The question presented by this appeal and raised by the several assignments of error is whether the plaintiff was a passenger upon the defendant's train and unlawfully ejected. It is admitted that he was ejected by the conductor under direct orders from the authorities of the defendant, and it is not contended that there is any evidence that the said ejection was accompanied with undue force. There is no evidence of rudeness, insult, or other unnecessary force used in expelling the plaintiff from the train. The facts are practically undisputed.

The plaintiff purchased of the defendant a mileage book at the rate of two cents per mile. He signed his name to the contract contained in it. On 14 April, 1910, he was a passenger from Charlotte to Ellenboro on the defendant's road. He had presented his mileage book to the agent at Charlotte, who pulled the proper number of coupons to cover the distance, and gave him the exchange ticket. On his trip he exhibited both the mileage book and the ticket to the conductor and completed his journey. On the return trip, the same afternoon, he presented his mileage book to the agent, who pulled his mileage and gave him the usual exchange ticket. When the conductor asked him for his ticket, he handed him the exchange ticket, and upon being asked for his mileage book in order that the conductor might compare the exchange ticket with the book, the plaintiff refused to exhibit his book, but stated to the conductor that he had it in his vest pocket, and repeatedly declined to let the conductor see it.

The evidence of the plaintiff itself discloses that the conductor time and again requested him to show his mileage book, telling him the exchange ticket was not good for passage without it, and that he would be compelled to put him off. The conductor wired the general passenger agent for instructions, and received a reply ordering him to put the plaintiff off the train if he refused to comply with the conditions of his mileage book and exhibit it to the conductor in connection with the exchange

ticket.    The conductor showed this message to the plaintiff, who still refused to show his mileage book, although he had it in his vest pocket.

Whereupon the conductor put the plaintiff off the train at the depot in Lincolnton.    The plaintiff hired a vehicle, drove to Gastonia, and came over to Charlotte on another road, reaching there three hours later than he would have done had he remained on the defendant's train.

The court charged the jury, in effect, that if they believed the evidence in the case, the plaintiff was not a passenger on the defendant's train, and therefore was not entitled to recover.

In considering this question it is well to bear in mind that the rate fixed by law for the sale of tickets upon common carriers is two and a half cents per mile, while mileage books are voluntarily sold by the railroad companies at the rate of two cents per mile.

It should also be borne in mind that the Legislature has no power to require the railroads to sell mileage books at a less rate than that fixed for ordinary tickets.    This has been settled finally by the Supreme Court of the United States in *Lake Shore Ry. v. Smith,* 173 U. S., 684; and to the same effect are the decisions of the State courts of Virginia, New York, and others.    *Anderson v. R. R.,* 7 L. R. A. (N. S.), 1086; *Beardesly v. R. R.,* N. Y. (56 N. E.), 488.

So it must be conceded that the mileage book is a special contract of carriage between the carrier and the passenger, signed by the passenger, and made in consideration of a reduced rate of transportation, voluntarily granted by the railroad in consideration of the quantity of transportation purchased.    Under such conditions the parties to the contract can incorporate in it such terms and conditions as they have mutually agreed upon.

In respect to such contracts it may, therefore, be stated as a general rule that the passenger is entitled only to those rights which the ticket confers, and is bound himself to perform the obligations which the ticket imposes upon him.    Hutchison on Carriers, sec. 1053, where the author cites a great array of cases from the Federal and State courts in support of his text.

In discussing a case similar to this, the Supreme Court of

Georgia says: "The plaintiff paid a special fare under a special contract. The defendant agreed that the plaintiff might travel for a fare which is not the full fare the law allowed, and the defendant had a 'right to impose such conditions as they saw fit." To the same effect is *Bitterman v. R. R.,* 207 U. S. (52 Law Ed.), 171; *Mosher v. R. R.,* 127 U. S., 390; *Boylan v. R. R.,* 132 U. S., 146; *Watson v. R. R.,* 49 L. R. A., 454.

The consensus of all the authorities, without a single exception so far as we have been able to find, is that by accepting such a contract at a reduced rate when he has the opportunity to purchase the usual and ordinary ticket, the passenger enters into a contract with the carrier different from that implied by law upon the purchaser of an ordinary ticket at full rate of fare. The purchaser is bound in such cases by the terms of the contract, and is entitled to its advantages of reduced fare.

The right of common carriers to attach special conditions and limitations to tickets issued at reduced rates seems to have been settled by the decisions of this Court. *McRae v. R. R.,* 88 N. C., 526; *Pickens v. R. R.,* 104 N. C., 312.

The validity of this mileage contract was passed upon and upheld by this Court in an opinion by *Mr. Justice Hoke* in *Harvey v. R. R.,* 153 N. C., 567, in which it is held that "A railroad mileage book is a contract of carriage with the purchaser or lawful holder, subject to certain restrictive stipulations, for the wrongful breach of which the holder may be expelled from the company's train." This case is cited and approved in *Dorsett v. R. R.,* at the last term of this Court, 156 N. C., 441. In both of these cases the railroad companies were held liable for violation of this very contract.

These identical questions have also been recently passed upon in *Desportes v. R. R.* (S. C.), 69 S. E., 148; *Perry v. R. R.* (Ga.), 70 S. E., 1122; *R. R. v. Evans* (Ind.), 82 S. E., 773; *R. R. v. Desauseur* (Ga.), 42 S. E., 479; *Harris v. R. R.* (N. J.), 72 Atl., 50.

It is immaterial whether the plaintiff read this ticket or not, for he knew of its conditions and complied with them on his trip in the morning. It was his own folly that he refused will-

fully and unnecessarily to comply with them on his return in the afternoon. The plaintiff admitted that he had his mileage book in his vest pocket, and boastingly refused to produce it. *French v. Trans. Co.* (Mass.), 85 N. E., 424; *Reed v. R. R.* (Tex.), 50 S. W., 432.

Assuming, for the sake of the argument only, that we have the right, to pass upon the reasonableness of such regulation, we are unable to see any great hardship imposed upon a passenger who desires to save a half cent per mile in traveling to require him to produce his mileage book in connection with the exchange ticket.

It is a well-known fact that the last General Assembly thoroughly investigated this question, and refused to interfere, even if it had the power. This regulation is devised to prevent impositions upon the railroad companies. As stated in the argument in this case, if the passenger was not required to exhibit his mileage book to the conductor, but only the exchange ticket, he could secure many exchange tickets at the railroad station and easily sell them at a small profit. Contract of mileage is a personal one and not assignable by its very terms, and were it not for this regulation the railroad company would be utterly unable to prevent one person from traveling on the mileage book of another.

It is useless to discuss the utility of this regulation, because it seems to be universally held that if the passenger accepts the reduced rate he must take with it these conditions which the carrier attaches to it.

We find, however, in the books a great many regulations, not a whit more unreasonable than this, which have been sustained by the courts. *Reed v. R. R.* (Tex), 50 S. W., 432; *R. R. v. Barlow* (Ga.), 30 S. E., 732; *Wenta v. R. R.* (Ga.), 33 S. E., 970; *Eastman v. R. R.* (N. H.), 46 Atl., 54; *England v. R. R.* (Tex.), 73 S. W., 24; *McRae v. R. R.,* 88 N. C., 526; *R. R. v. Hudson* (Ky.), 80 S. W., 454; *Dangerfield v. R. R.* (Kan.), 67 Pac., 405; *Boling v. R. R.* (Mo.), 88 S. W., 35.

From an unbroken line of authorities we are of opinion that the refusal of the plaintiff to present his mileage book in con-

nection with the exchange ticket by the express terms of the
contract disentitles the plaintiff to ride as a passenger upon the
train.·

It was not optional with the conductor to waive any such
violation, and he did not waive it, for he required the plaintiff
to perform it that very morning, and the plaintiff voluntarily
acknowledged his duty to perform it by producing the mileage
book when demanded.

It is contended by the plaintiff that the conductor should
have ·returned to him the exchange ticket. The question in-
volved in this case is not the value of that exchange ticket, but
the right of the plaintiff to continue as a passenger of the
defendant's train when he willfully and obstinately refused to
produce his mileage book in violation of the very contract
which he had signed, a part of which reads as follows: "Good
for continuous passage to destination, commencing only on date
stamped on back hereof. Issued in exchange for proper num-
ber of coupons from and valid only when presented on train in
connection with interchangeable mileage ticket."

This exchange ticket was absolutely valueless without the
production of the mileage book, and did not entitle the passenger
to transportation. The failure, therefore, of the conductor at
the time to return it to the plaintiff certainly could not entitle
the plaintiff to ride upon the train when he still repeatedly re-
fused to produce his mileage book in connection with it. The
identical point is decided by the Supreme Court of Minnesota
in *Rahilly v. R. R.,* 68 N. W., 853, wherein it is said: "We are
all agreed that even if the conductor had no right to take up the
ticket, this would not give the plaintiff any right to refuse to
pay his fare until and unless the ticket was returned. Having
no right to ride on the ticket, it was his duty to pay the fare, or
leave the train, and then pursue his own remedy against the
defendant for wrongfully withholding the ticket from him."

To the same effect is *Elliot v. R. R.,* 79 Pac., 420, in which
it is said: "It is further contended that the defendant could
not, while retaining the void ticket offered by plaintiff, legally
demand the delivery of any other ticket or the payment of fare,
and could not legally eject plaintiff for failure to comply with

MASON v. R. R.

such demand. As already stated in our discussion of the find-
ings of the court on this subject, the conductor expressly repudi-
ated this ticket as absolutely void, and notified the plaintiff that
he could not honor it. It was, as a matter of fact, entirely
without value.

"We are not at all satisfied that the conductor had any right
to retain this ticket, but we cannot see how an improper reten-
tion of a worthless ticket by the conductor could give the plain-
tiff any right to remain on the train without the presentation
of a valid ticket or the payment of fare. He had not exhibited
or surrendered a valid ticket; he had given nothing of value to
the conductor, and he had refused and continued to refuse to
pay his fare."

We are of opinion that the judge of the Superior Court was
right in holding that by his unreasonable conduct in refusing
to exhibit the mileage book in his pocket the plaintiff forfeited
his right as a passenger, and was rightfully ejected from the
defendant's train. Section 2629 of the Revisal of 1905 au-
thorizes the ejection of passengers who refuse to pay fare or
violate the rules and regulations of the carrier.

No error.

HOKE, J., concurring in the result: I am of opinion that,
under existent law, the mileage book, in its present form, con-
stitutes a contract of carriage, subject to certain restrictive
provisions, and to the extent that these provisions are reasona-
ble and reasonably insisted on, they bind the parties according
to their tenor. In my judgment, the stipulation in question
here is a reasonable one, being necessary to prevent the improper
use of these books by persons who do not own them, and there
is nothing in the record that, to my mind, justifies or permits
the conclusion that in this instance the conductor acted mali-
ciously or in wanton disregard of plaintiff's rights as a passen-
ger. I therefore concur in the decision denying recovery to
plaintiff.

CLARK, C. J., dissenting: It is too late to contest the propo-
sition that common carriers are subject to public regulation,
and that when they make regulations themselves, such regula-
tions must be reasonable.

MASON v. R. R.

It is not correct that the defendant company sold the plaintiff the mileage book at two cents per mile as a favor. When the General Assembly of this State by chapter 216, Laws 1907, prescribed two and one-quarter cents per mile as a maximum legal passenger rate an injunction was sued out in the Federal court to restrain the operation of this statute on the ground that it was confiscatory. Upon a reference to ascertain the facts, it was found that the railroad companies were making more money under the new rate than under the former higher rate. Thereupon the railroad companies proposed to the Governor of this State that if the rate was made two and one-half cents per mile they would issue mileage books at two cents per mile.. In consequence the Legislature was called in special session in 1908 and adopted the two and one-half cent rate. It was well understood at the time that the mileage book theretofore in use, and which is still in general use elsewhere, from which mileage is pulled on the train, was intended. No other kind had ever been heard of in this section. It was therefore by virtue of contract with the State, and not as an act of grace, that the plaintiff was enabled to buy this mileage book. It was a distinct violation of contract on the part of the defendant that the mileage book put on sale was hedged about with these restrictions. Good faith to the public and to the plaintiff requires that the defendant should pay damages for the wrongful ejectment of the plaintiff.

Even if there had not been this contract between the railroad companies and the State, the regulations attached to this mileage book were unreasonable and should not be enforced. They are unreasonable because never known here, or required, till after the adjournment of the Legislature of 1908, and are practically unknown anywhere except in Virginia, Georgia, and in this State. Their enforcement in South Carolina has been prohibited by statute. These regulations being unnecessary and vexatious, should not be upheld by the courts.

Having seen fit to require that a mileage book should be used to buy tickets with, certainly it was unreasonable to require thereafter anything more than the presentation of the ticket which had been issued in exchange for the mileage. The

ticket was then on the same footing as any other local ticket good for that day and train. If the defendant feared that such ticket might be held by some one who did not own the mileage for which it was issued, then it should simply have required the mileage book to be presented to the conductor as formerly, and not to be exchanged for a ticket. The double requirement is inexcusable.

It is true, as argued before us by defendant's counsel, that it seems a discrimination to permit those who can advance $20 to purchase a mileage book at two cents per mile while those who cannot, or who do not wish to do so, are required to pay two and one-half cents. But the railroads themselves originated the system of mileage books upon the ground that it saved them the expense and inconvenience of selling so many tickets, when 1,000 miles could be sold at once. It is in denial of the very reason given for issuing mileage books heretofore that the defendant now requires that tickets shall be bought with mileage books. The whole trouble can be redressed by the railroads voluntarily, or under compulsion of a statute, selling transportation to all, whether with or without mileage books, at two cents per mile— the rate which has been established and which is in force in so many other States and which experience has proven to be most profitable.

In view of the reason heretofore given for placing mileage books on sale, it would seem that the requirement now that these books should be exchanged for tickets puts a double expense upon the railroad, and it has been suggested that the reason therefor is the desire to discourage the public from buying the mileage books which the railroads agreed to issue provided the State would raise the passenger fare to two and one-half cents.

If the defendant had shown that in fact the plaintiff was not the holder of a mileage book, and that his ticket was obtained of the agent by misrepresentation, the defense would admit of consideration. But here it is not denied that the plaintiff owned a mileage book; had shown it to this same conductor on this same train on his way up that morning; that in exchange for mileage out of that book he had obtained this ticket from the defendant's agent; that the conductor, evidently doubting his

MASON *v.* R. R.

right upon that state of facts to ditch the plaintiff, wired to headquarters, and the company, with knowledge of these facts, ordered him put off. The ticket on its face recited the number of the mileage book; the company's record shows that the plaintiff had bought it, and the conductor had seen it in his hands that morning. · Besides, the station agent who sold the ticket in exchange for the mileage was accessible.

Thus, with the money of the plaintiff for his passage in its treasury and with ample proof of the fact as shown by the ticket issued in exchange for such mileage, the defendant put the plaintiff off its train without returning his ticket or refunding the money which he had paid to the company for it and for which the ticket was a receipt. This conduct was arbitrary, unreasonable, and unjust, and the defendant should be made to pay such damages as a jury should deem a fair compensation for the humiliation and wrong it has thereby inflicted upon the plaintiff.

ALLEN, J., dissenting: The opinion of the Court, as announced by *Mr. Justice Brown,* if carried to its legitimate conclusion, will permit common carriers to make contracts for mileage upon their own terms, and however unreasonable any stipulation may be, it will be binding because, as he says, it is a special contract based upon a consideration.

I think the error consists in assuming that the parties to the contract are upon equal terms, and in a matter of this importance that we ought not to go outside of the facts of this case, and prejudge questions not before us.

The question does not arise as to whether the General Assembly has the power to compel common carriers to issue mileage books because they are making such contracts, and I see no reason for suggesting that the power does not exist until the question is presented, nor for intimating that other, and perhaps more stringent, regulations may be adopted.

It is admitted in this case that the plaintiff had a mileage book, which is said in *Harvey v. R. R.,* 153 N. C., 571, to constitute a contract of carriage, subject to certain restrictive stipulations for a wrongful breach of which the company may, under given conditions, expel the holder from its train.

159—13

MASON *v.* R. R.

The restrictive conditions, so far as applicable to this case, are that a ticket shall be procured on the mileage book, and that when the ticket is presented to the conductor the mileage book shall accompany it.

The first of these conditions was complied with, and the plaintiff was on the train of the defendant with a ticket which he had lawfully procured upon his mileage book.

He did not present his mileage book to the conductor with his ticket, and was expelled from the train.

The question is, therefore, presented under the rule adopted in the *Harvey case,* as to whether the failure to present the mileage book with the ticket was a wrongful breach of the stipulation in the contract, created by issuing the mileage book, which justified the expulsion of the plaintiff from the train under the conditions then existing.

I think there is evidence that there was no wrongful breach of the stipulation, and if so, the judgment of nonsuit should be set aside and a new trial awarded.

I assume that the conductor has the right to demand the mileage book, when necessary to identify the holder, or for the purpose of seeing that the ticket presented corresponds with it; but I deny that he has any right to make such demand for the annoyance of the passenger, or in order that he may assert his authority.

In this case the plaintiff went from Charlotte to Ellenboro on the morning of the day he was expelled, and presented to the conductor his ticket and mileage book; there was a controversy at the time as to the right to see the book, the plaintiff telling the conductor to look at it good, as he would not see it again, and also informing him that he would be back that afternoon; he was expelled on the return trip from Ellenboro by the same conductor who had compared the ticket and the mileage book on the morning of that day, and after he had accepted the ticket from the plaintiff, which he retained, and had been reminded of the conversation about the mileage book on the trip to Ellenboro.

This, as it seems to me, furnishes some evidence that the demand to see the mileage book was not in good faith.