HOKE, J., concurring; CLARK, C. J., and ALLEN, J., dissenting.
Civil action to recover damages for an alleged unlawful ejection of plaintiff from passenger train of the defendant.
This issue was submitted to the jury:
Was the plaintiff a passenger on the defendant's train, as alleged in the complaint? Answer: No.
There was a judgment for the defendant. The plaintiff excepted and appealed.
The question presented by this appeal and raised by the assignments of error is whether the plaintiff was a passenger upon the defendant's train and unlawfully ejected. It is admitted that he was ejected by the conductor under direct orders from the authorities of the defendant, and it is not contended that there is any evidence that the said ejection was accompanied with undue force. There is no evidence of rudeness, insult, or other unnecessary force used in expelling the plaintiff from the train. The facts are practically undisputed.
The plaintiff purchased of the defendant a mileage book at the rate of two cents per mile. He signed his name to the contract contained in it. On 14 April, 1910, he was a passenger from Charlotte to Ellenboro on the defendant's road. He had presented his mileage book to the agent at Charlotte, who pulled the proper number of coupons to cover the distance, and gave him the exchange ticket. On his trip he exhibited both the mileage book and the ticket to the conductor and completed his journey. On the return trip, the same afternoon, he presented his mileage book to the agent, who pulled his mileage and gave him the usual exchange ticket. When the conductor asked him for his ticket, he handed him the exchange ticket, and upon being asked for his mileage book in order that the conductor might compare the exchange ticket with the book, the plaintiff refused to exhibit his book, but stated to the conductor that he had it in his vest pocket, and repeatedly declined to let the conductor see it.
The evidence of the plaintiff itself discloses that the conductor time and again requested him to show his mileage book, telling him the *Page 150 
exchange ticket was not good for passage without it, and that he would be compelled to put him off. The conductor wired the general passenger agent for instructions, and received a reply ordering him to put the plaintiff off the train if he refused to comply with the conditions of his mileage book and exhibit it to the conductor in connection with the exchange ticket. The conductor showed this message to the (186) plaintiff, who still refused to show his mileage book, although he had it in his vest pocket.
Whereupon the conductor put the plaintiff off the train at the depot in Lincolnton. The plaintiff hired a vehicle, drove to Gastonia, and came over to Charlotte on another road, reaching there three hours later than he would have done had he remained on the defendant's train.
The court charged the jury, in effect, that if they believed the evidence in the case, the plaintiff was not a passenger on the defendant's train, and therefore was not entitled to recover.
In considering this question it is well to bear in mind that the rate fixed by law for the sale of tickets upon common carriers is two and a half cents per mile, while mileage books are voluntarily sold by the railroad companies at the rate of two cents per mile.
It should also be borne in mind that the Legislature has no power to require the railroads to sell mileage books at a less rate than that fixed for ordinary tickets. This has been settled finally by the Supreme Court of the United States in R. R. v. Smith, 173 U.S. 684; and to the same effect are the decisions of the State courts of Virginia, New York, and others.Anderson v. R. R., 7 L.R.A. (N.S.), 1086; Beardsley v. R. R.,162 N.Y., 230.
So it must be conceded that the mileage book is a special contract of carriage between the carrier and the passenger, signed by the passenger, and made in consideration of a reduced rate of transportation, voluntarily granted by the railroad in consideration of the quantity of transportation purchased. Under such conditions the parties to the contract can incorporate in it such terms and conditions as they have mutually agreed upon.
In respect to such contracts it may, therefore, be stated as a general rule that the passenger is entitled only to those rights which the ticket confers, and is bound himself to perform the obligations which the ticket imposes upon him. Hutchison on Carriers, sec. 1053, where the author cites a great array of cases from the Federal and State courts in support of his text.
In discussing a case similar to this, the Supreme Court of (187) Georgia says: "The plaintiff paid a special fare under a special contract. The defendant agreed that the plaintiff might travel for a fare which is not the full fare the law allowed, and the defendant *Page 151 
had a right to impose such conditions as they saw fit." To the same effect is Bitterman v. R. R., 207 U.S. 171; Mosher v. R. R., 127 U.S. 390;Boylan v. R. R., 132 U.S. 146; Watson v. R. R., 49 L.R.A., 454.
The consensus of all the authorities, without a single exception so far as we have been able to find, is that by accepting such a contract at a reduced rate when he has the opportunity to purchase the usual and ordinary ticket, the passenger enters into a contract with the carrier different from that implied by law upon the purchaser of an ordinary ticket at full rate of fare. The purchaser is bound in such cases by the terms of the contract, and is entitled to its advantages of reduced fare.
The right of common carriers to attach special conditions and limitations to tickets issued at reduced rates seems to have been settled by the decisions of this Court. McRae v. R. R., 88 N.C. 526; Pickens v.R. R., 104 N.C. 312.
The validity of this mileage contract was passed upon and upheld by this Court in an opinion by Mr. Justice Hoke in Harvey v. R. R., 153 N.C. 567, in which it is held that "A railroad mileage book is a contract of carriage with the purchaser or lawful holder, subject to certain restrictive stipulations, for the wrongful breach of which the holder may be expelled from the company's train." This case is cited and approved in Dorsett v. R.R., 156 N.C. 441. In both of these cases the railroad companies were held liable for violation of this very contract.
These identical questions have also been recently passed upon inDesportes v. R. R., 87 S.C. 160; Perry v. R. R., 9 App. Ga., 260; R. R.v. Evans, 169 Ind. 410; R. R. v. Desauseur 116 Ga. 53; Harris v. R. R.,77 N.J. L., 278
It is immaterial whether the plaintiff read this ticket or not, for he knew of its conditions and complied with them on his trip in the morning. It was his own folly that he refused willfully and (188) unnecessarily to comply with them on his return in the afternoon. The plaintiff admitted that he had his mileage book in his vest pocket, and boastingly refused to produce it. French v. Trans. Co., 199 Mass. 433.
Assuming, for the sake of the argument only, that we have the right to pass upon the reasonableness of such regulation, we are unable to see any great hardship imposed upon a passenger who desires to save a half cent per mile in traveling to require him to produce his mileage book in connection with the exchange ticket.
It is a well-known fact that the last General Assembly thoroughly investigated this question, and refused to interfere, even if it had the power. This regulation is devised to prevent impositions upon the railroad companies. As stated in the argument in this case, if the passenger *Page 152 
was not required to exhibit his mileage book to the conductor, but only the exchange ticket, he could secure many exchange tickets at the railroad station and easily sell them at a small profit. Contract of mileage is a personal one and not assignable by its very terms, and were it not for this regulation the railroad company would be utterly unable to prevent one person from traveling on the mileage book of another.
It is useless to discuss the utility of this regulation, because it seems to be universally held that if the passenger accepts the reduced rate he must take with it those conditions which the carrier attaches to it.
We find, however, in the books a great many regulations, not a whit more unreasonable than this, which have been sustained by the courts. Reed v. R.R., Tex.; R. R. v. Barlow 105 Ga. 483; Wenta v. R. R., 108 Ga. 290;Eastman v. R. R., 70 N. H., 240; England v. R. R., 32 Tex. Civ. App. 86;McRae v. R. R., 88 N.C. 526; R. R. v. Hudson, 117 Ky. 995; Dangerfieldv. R. R., 62 Kan. 85; Boling v. R. R., 189 Mo., 219.
From an unbroken line of authorities we are of opinion that the refusal of the plaintiff to present his mileage book in connection (189) with the exchange ticket by the express terms of the contract disentitles the plaintiff to ride as a passenger upon the train.
It was not optional with the conductor to waive any such violation, and he did not waive it, for he required the plaintiff to perform it that very morning, and the plaintiff voluntarily acknowledged his duty to perform it by producing the mileage book when demanded.
It is contended by the plaintiff that the conductor should have returned to him the exchange ticket. The question involved in this case is not the value of that exchange ticket, but the right of the plaintiff to continue as a passenger of the defendant's train when he willfully and obstinately refused to produce his mileage book in violation of the very contract which he had signed, a part of which reads as follows: "Good for continuous passage to destination, commencing only on date stamped on back hereof. Issued in exchange for proper number of coupons from and valid only when presented on train in connection with interchangeable mileage ticket."
This exchange ticket was absolutely valueless without the production of the mileage book, and did not entitle the passenger to transportation. The failure, therefore, of the conductor at the time to return it to the plaintiff certainly could not entitle the plaintiff to ride upon the train when he still repeatedly refused to produce his mileage book in connection with it. The identical point is decided in Rahilly v. R. R., 66 Minn. 114, wherein it is said: "We are all agreed that even if the conductor had no right to take up the ticket, this would not give the *Page 153 
plaintiff any right to refuse to pay his fare until and unless the ticket was returned. Having no right to ride on the ticket, it was his duty to pay the fare, or leave the train, and then pursue his own remedy against the defendant for wrongfully withholding the ticket from him."
To the same effect is Elliott v. R. R., 145 Cal. 441, in which it is said: "It is further contended that the defendant could not, while retaining the void ticket offered by plaintiff, legally demand the delivery of any other ticket or the payment of fare, and could not legally eject plaintiff for failure to comply with such demand. As already stated in our discussion of the findings of the court on (190) this subject, the conductor expressly repudiated this ticket as absolutely void, and notified the plaintiff that he could not honor it. It was, as a matter of fact, entirely without value.
"We are not at all satisfied that the conductor had any right to retain this ticket, but we cannot see how an improper retention of a worthless ticket by the conductor could give the plaintiff any right to remain on the train without the presentation of a valid ticket or the payment of fare. He had not exhibited or surrendered a valid ticket; he had given nothing of value to the conductor, and he had refused and continued to refuse to pay his fare."
We are of opinion that the judge of the Superior Court was right in holding that by his unreasonable conduct in refusing to exhibit the mileage book in his pocket the plaintiff forfeited his right as a passenger, and was rightfully ejected from the defendant's train. Section 2629 Revisal authorizes the ejection of passengers who refuse to pay fare or violate the rules and regulations of the carrier.
No error.