## COMMONWEALTH *vs.* WILLIAM H. POWER & others

A rail road corporation has authority to make and carry into execution reasonable regulations for the conduct of all persons using the rail road or resorting to its depots, without prescribing such regulations by by-laws; and the superintendent of a rail road depot, appointed by the corporation, has the same authority, by delegation.

A superintendent of a rail road depot has authority to exclude therefrom persons who persist in violating the reasonable regulations prescribed for their conduct, and thereby annoy passengers or interrupt the officers and servants of the corporation in the discharge of their duties.

Where the entrance of innkeepers, or their servants, into a rail road depot, to solicit passengers to go to their inns, is an annoyance to passengers, or a hindrance and interruption to the rail road officers in the performance of their duties, the super-intendent of the depot may make a regulation to prevent persons from going into the depot for such purpose; and if they, after notice of such regulation, attempt to violate it, and, after notice to leave the depot, refuse so to do, he and his assistants may forcibly remove them; using no more force than is necessary for that purpose.

It an innkeeper who has frequently entered a rail road depot, and annoyed passengers by soliciting them to go to his inn, receives notice from the superintendent of the depot that he must do so no more, and he nevertheless repeatedly enters the depot for the same purpose, and afterwards obtains a ticket for a passage in the cars, with the *bonâ fide* intention of entering the cars as a passenger, and goes into the depot on his way to the cars, and the superintendent, believing that he had entered the depot to solicit passengers, orders him to go out, and he does not exhibit his ticket, nor give notice of his real intention, but presses forward towards the cars, and the superintendent and his assistants thereupon forcibly remove him from the depot. using no more force than is necessary for that purpose, such removal is justifiable, and not an indictable assault and battery.

THIS was a complaint against the defendants, made to a justice of the peace, for an assault and battery upon Timothy Hall, on the 23d of March 1844. The defendants appealed from the justice to the court of common pleas. Trial before that court at the last June term. The judge before whom that trial was had made the following report thereof:

It appeared, that at the time of the alleged assault, &c., the defendant Power was master of the depot of the Western Rail Road, at Pittsfield, and that the other defendants were servants of the Western Rail Road Corporation: That said Hall, having in his pocket a ticket for his passage in the rail road cars from Pittsfield to Richmond, and having a *bonâ fide* intention to go to Richmond, entered said depot about the time of the arrival of the cars for Richmond, and was proceeding to the

platform, for the purpose of entering a car : That said ticket had been procured by another person, and that neither the defendants nor any other agent of the said corporation knew that Hall had it, or that he intended to go to Richmond.

Said Power alleged in his defence, that Hall was going to the platform to solicit passengers to go to his house, he being the keeper of a tavern near the depot ; that said Power met Hall on his way to the platform, told him he must not go there, laid his hands upon and ordered him to leave the depot, without any previous inquiry as to his purposes ; that Hall made no reply, but pressed forward and endeavored to reach the platform in spite of the efforts of said Power, who thereupon ordered the other defendants to put him out of the depot; and that they accordingly took him, and forcibly put him out, not using any more violence than was necessary to accomplish that object.

It appeared in evidence, or was admitted on the part of the Commonwealth, that the innkeepers in the neighborhood of said depot had previously to this affair been in the habit of going, or sending their servants, to the platform, to solicit passengers, arriving in the cars, as customers to their several houses; and that Hall had personally, and by his servants, participated in this practice ; that this practice had become a great annoyance to passengers ; that said Power, having been placed, by the rail road corporation, in charge of the depot, had addressed a circular letter to said innkeepers, about two weeks before the said assault, stating the facts, and requesting them to discontinue said practice, and giving them notice that they would thereafter be excluded from the platform ; that all of them, except Hall, discontinued the practice, but that he continued to go to the platform and solicit passengers; that said Power had forbidden him, a day or two before the said assault, to enter the depot at all ; that notwithstanding this, Hall had again forced his way to the platform, when the cars were in, against the remonstrances and efforts of said Power, who again told him that he must not come to the depot any more.

On this evidence, the defendants contended that they were

justified in doing the acts complained of. The judge instructed the jury that the foregoing facts did not constitute a defence; and under said instruction, a verdict was returned against the defendants. But as the question of law in the case was, in the opinion of the judge, so doubtful as to require the decision of the supreme judicial court, he made the foregoing report of the case, pursuant to the Rev. Sts. *c.* 138, § 12.

*R. A. Chapman & Colt,* for the defendants. Every proprietor of lands or buildings has a right to the control of them, and may put out other persons, after ordering them to remove *Commonwealth* v. *Clark,* 2 Met. 25. Common carriers have the same right as others to the control of their premises. Though they cannot refuse to carry goods or passengers, without good cause, yet a passenger who is rejected, and *à fortiori* a person who does not claim the rights of a passenger, has not a right to remain on their premises against their will. Hall should have exhibited his ticket, or offered the fare, and claimed the rights of a passenger. See 2 Kent Com. (3d ed.) 598. Bac. Ab Carriers, B. Inns and Innkeepers, C. 3. *Spooner* v. *Baxter,* 16 Pick. 411.

If Hall ever had any right to go to the platform, (which is denied,) he had forfeited that right by his previous conduct, and the defendants, as agents of the corporation, were well warranted in removing him, while they had a reasonable apprehension that he would cause disturbance and annoyance. *Howell* v. *Jackson,* 6 Car. & P. 723. Story on Bailm. § 476. Chit. Con. (5th Amer. ed.) 478. In *Markham* v. *Brown,* 8 N. Hamp. 523, it was held that the right of one to enter an inn, for the purpose of soliciting passengers for a stage coach, may be forfeited by his misconduct in disturbing the guests; and that an innkeeper may prohibit a stage agent from entering, until the ground of apprehension is removed. And in *Jencks* v. *Coleman,* 2 Sumner, 221, it was decided that proprietors of steamboats, though they are common carriers, may rightfully exclude persons from their boats, whose character, habits or purposes interfere with the proprietors' interests, and all persons who refuse to obey the reasonable rules prescribed for the regulation of the boats.

*Bishop,* for the Commonwealth.   The law relied on for the defendants does not apply to the facts of this case.   Exclusive right of possession of premises is necessary in order to justify a removal of others therefrom by force.   One cotenant, who obtains possession of the whole, has no right forcibly to keep out another tenant.   A rail road corporation is not, strictly speaking, a private corporation, like a steamboat or stage company, whose property is wholly their own.   It is a public corporation, and takes private property for public use.   It has not exclusive possession of the track, depots, &c. as against individuals and the public.   The public have a right there, and going there is not a trespass.   Therefore, if Hall was not a trespasser, the defendants had no right to expel him by force. Can an agent of a turnpike road forbid any person to travel on it ; or can he seize a traveller who violates a by-law against passing over a bridge faster than on a walk, and turn him off by force ?

The Rev. Sts. *c.* 44, §§ 1, 2, authorize corporations to establish by-laws, and prosecute for violations of them.   But the rail road corporation has no by-law forbidding taverners and porters to crowd about the depots.   A circular letter of the agent had been issued, without any authority from the corporation, and therefore was of no binding force.

But if Hall might rightfully have been excluded from the platform, by reason of his former conduct, yet he could not be legally excluded from the depot.   He was seized before he reached the platform.   One may stand on the line of his close, and prevent another's entry ; but he cannot resist an approach towards it, by way of anticipating an injury.   See *Reynell* v *Champernoon,* Cro. Car. 228.   *Weaver* v. *Bush,* 8 T. R. 81.

Further ; Hall had a ticket, and a right to a passage, and a right to go through the depot to the platform, to claim a passage. He was not bound to give notice that he was a passenger ; the defendants should have inquired of him what his purpose was before laying hands on him.

*Chapman,* in reply.   The Rev. Sts. *c.* 44, § 2, give no authority to corporations to make by-laws with penalties, which shall affect *third persons.*

SHAW, C. J. This is a criminal prosecution instituted against Power and several of his assistants acting under his orders, charging an assault and battery upon the complainant, Timothy Hall. It comes before the court upon a report of the evidence. It appears that the learned judge did not give detailed instructions to the jury, upon the questions of law arising in the case; but the evidence being stated, the jury were directed that the facts stated did not constitute a defence; and a verdict, under that instruction, was rendered against the defendants. If it was competent for the jury, consistently with the rules of law, to render a verdict for the defendants upon this evidence, then the verdict should be set aside and a new trial granted. It becomes then necessary to inquire what the rules of law are, and how they apply to the evidence reported.

The court are of opinion, that the rail road corporation, both as the owners and proprietors of the houses and buildings connected with the rail road, and as carriers of passengers, have authority to make reasonable and suitable regulations in regard to passengers intending to pass and repass on the road, in the passenger cars, and in regard to all other persons making use of such houses and buildings. This authority is incident to such ownership of the real estate, and to their employment as passenger carriers; and all such regulations will be deemed reasonable, which are suitable to enable them to perform the duties they undertake, and to secure their own just rights in such employment; and also such as are necessary and proper to ensure the safety and promote the comfort of passengers. The reasonableness of such regulations must in some measure be judged of with reference to the particular depot at which they are adopted. Regulations may be proper and necessary at one of the termini of the road, where there is usually a great throng of passengers and other persons connected with the business of the road, which would not be required at a way station, where few persons enter or leave the cars, and where they stop but a few moments.

And we are also of opinion, that the regulations, thus to be made and enforced, are not necessary to be made in the form

of by-laws, to be carried into effect by penalties and prosecu tions. Such by-laws are rather the regulations which a corporation have power to make in respect to the government of their own members, and of their corporate officers, or of municipal corporations, that exercise, to a limited extent, the powers of government. But the regulations in question are such as an individual, who should happen to be the sole owner of the depots and buildings, and of the rail road cars, would have power to make, in virtue of his ownership of the estate, and of his employment as a carrier of passengers.

That a rail road corporation are to be deemed carriers of passengers, and are subject to the duties, and entitled to the privileges and powers incident to such employment, seems to be settled by various cases, in which suits have been sustained by and against them. They are in this respect on the footing of owners of steamboats. Both are modern modes of conveyance; but the rules of the common law are applicable to them, as they take the place of other modes of carrying passengers. *Jencks* v. *Coleman*, 2 Sumner, 221. *Camden & Amboy Rail Road Co.* v. *Burke*, 13 Wend. 611. *Pardee* v. *Drew*, 25 Wend. 459. *Pickford* v. *Grand Junction Railway Co.* 8 Mees. & Welsb. 372. An owner of a steamboat or rail road, in this respect, is in a condition somewhat similar to that of an innkeeper, whose premises are open to all guests. Yet he is not only empowered, but he is bound, so to regulate his house, as well with regard to the peace and comfort of his guests, who there seek repose, as to the peace and quiet of the vicinity, as to repress and prohibit all disorderly conduct therein ; and of course he has a right, and is bound, to exclude from his premises all disorderly persons, and all persons not conforming to regulations necessary and proper to secure such quiet and good order. *Markham* v. *Brown*, 8 N. Hamp. 523.

We are also of opinion, that the power which the company thus have to regulate their several depots, they may delegate to suitable officers. Indeed, it is the only mode in which a corporation can exercise their powers. And where they have appointed a superintendent with authority, by himself and his

assistants, to have charge of the depot and manage its concerns, it is incident to his authority to exclude, or direct the exclusion of persons who persist in violating the reasonable regulations prescribed, and thereby interrupt the officers and servants of the company in the discharge of their respective duties, or annoy passengers.

If it be insisted, that by opening the doors of their depots, the company give an implied license to any and all persons to enter, it may be answered, that by thus opening their doors, they do, *primâ facie*, give an implied license to all persons to enter, and no person is a trespasser by merely entering therein : But all such licenses are in their nature revocable ; and if actually revoked, and due notice given to an individual or class of individuals, and they still persist in entering, it is without a license, and the owner has a right to exclude them by force, if necessary, using no more force than is necessary for that purpose. *Weaver* v. *Bush,* 8 T. R. 78. Without such a power, the business could not be carried on ; because the crowd of persons entering, without intending to take passage, might be so great as to exclude passengers.

In regard to the fact that Hall had a ticket at the time, and intended *bonâ fide* to go in the cars to Richmond, it appears to us that a fact within his own private knowledge, not communicated to the superintendent, when it was in his power to communicate it, cannot place the superintendent in the wrong, in a case where he would be otherwise justified. If Hall had repeatedly violated a reasonable regulation, in going upon the platform when expressly prohibited, and if the superintendent had reasonable ground to believe that he was repeating such violation, and he gave no notice that he then came there for another purpose, when it was in his power to do so, the superintendent and his assistants, acting on reasonable grounds of belief, must stand on the same ground of justification in this respect, as if Hall had no such purpose.

We are therefore of opinion, that upon the evidence detailed in the judge's report, the jury should be instructed in a manner somewhat as follows : That if Power had been placed in

charge of the depot by the corporation, as superintendent, he had all the authority of the corporation, both as owners and occupiers of real estate, and also as carriers of passengers, incident to the duty of control and management : That this power and authority of the corporation extended to the reasonable regulation of the conduct of all persons using the railroad, or having occasion to resort to the depots, for any purpose : That this power was properly to be executed by a superintendent, adapting his rules and regulations to the circumstances of the particular depot under his charge; and that it was not necessary that such regulations should be prescribed by by-laws of the corporation : That the opening of depots and platforms for the sale of tickets, for the assembling of persons going to take passage, or landing from the cars, amounts in law to a license to all persons, *primâ facie,* to enter the depot, and that such entry is not a trespass ; but that it is a license conditional, subject to reasonable and useful regulations; and, on non-compliance with such regulations, the license is revocable, and may be revoked either as to an individual, or as to a class of individuals, by actual or constructive notice to that effect : That if the platform, as part of the depot, is appropriated to and connected with the entrance of passengers into the cars, and the exit of passengers from the cars, and for the accommodation of their baggage, and if the soliciting of passengers to take lodgings in particular public houses, by the keepers of them or their servants, is a purpose not directly connected with the carriage of passengers by the rail road, on their entrance into or exit from cars ; that if, when urged with earnestness and importunity, it is an annoyance of passengers, and interruption to their proper business of taking or leaving their seats in the cars, and procuring or directing the disposition of their baggage ; or if the presence of such persons, for such a purpose, is a hindrance and interruption to the officers and servants of the corporation, in the performance of their respective and proper duties to the corporation, as passenger carriers ; then the prohibition of such persons from entering upon the platform is a reasonable and proper regulation, and a person who, after actual or constructive notice of such regulation, violates or attempts to violate it, thereby loses

his license to enter the depot; that such license as to him may be revoked; and if, upon notice to quit the depot, he refuses so to do, he may be removed therefrom by the superintendent and the persons employed by him; and if they use no more force than is necessary for that purpose, such use of force is not an assault and battery, but is justifiable: That as to the circumstances of the present case, if the superintendent had issued a circular, giving notice to all innkeepers and landlords, that he had prohibited them from entering the depot to solicit persons to go to their respective houses as guests, and if this notice came to Hall, and he afterwards, and after special notice to him personally, had attempted to violate this prohibition, and solicit passengers; and if, upon the particular occasion, he gave no notice of coming for any other purpose; and if the defendant Power met him on his way to the platform, told him he must not go there, laid his hands on him, and ordered him to leave the depot, without any inquiry as to the purposes of Hall, and Hall made no reply, but pressed forward and attempted to reach the platform, in spite of the efforts of Power; this was strong *primâ facie* evidence that he was going there with intent to solicit passengers, in violation of the notice and revocation of license; and that if he gave no notice of his intention to enter the car as a passenger, and of his right to do so; and if Power believed that his intention was to violate a subsisting reasonable regulation; then he and his assistants were justified in forcibly removing him from the depot: That if Hall gave no notice of his having a ticket, of his intention and purpose to enter the cars as a passenger, and of his right to do so, and that Power had no notice of it, then Hall could not justify his conduct, and make Power a wrong doer, by proving the possession of such a ticket, or of his intent to go in the cars to Richmond, as a passenger; and that he was to be considered as standing on the same footing as if he had not possessed such ticket.

*New trial granted.*