CASE 51—PETITION ORDINARY—DECEMBER 1.

## Louisville & Nashville Railroad Co. v. Catron.

### APPEAL FROM KNOX CIRCUIT COURT.

1. SEPARATE COACH LAW—STATUTORY CONSTRUCTION—OFFICER AND PRISONER.—Under the provision of section 801 of the Kentucky Statutes, which is a part of the separate coach law, that "the provisions of this act shall not apply to employes of railroads, or persons employed as nurses, or officers in charge of prisoners," an officer having in custody a negro prisoner has no right to take

the prisoner with him into the car or compartment set apart for white people. The exception in the statute is in favor of the officer and not of the prisoner, the officer having the right to go with his prisoner into the car set apart for colored persons.

WILSON & RAWLINGS FOR APPELLANT.

1. The exception in the statute applies to the nurse in charge of an invalid or child, but not to the invalid or child, and applies to the officer in charge of the prisoner, but not to the prisoner. The officer may follow the prisoner, but the prisoner can not follow the officer into the car provided for his race.

2. But independent of any construction of that act, the railroad company had the right to assign the officer with his insane negro prisoner to such car as it deemed proper, and it was its duty to do so under the circumstances. Hutchinson on Carriers, sec. 542, et seq.

J. W. ALCORN ON SAME SIDE.

1. As the provisions of the separate coach law do not apply to officers in charge of prisoners, when an officer in charge of a prisoner enters a railroad train, the persons in charge of the train have a right to assign him to a seat in any compartment of the train, provided such seat and compartment is as comfortable as the others.

JAMES D. BLACK AND TINSLEY & FAULKNER FOR APPELLEES.

1. The officer being a white man certainly had a right to a seat in the coach set apart for white persons, and as the law makes it his imperative duty to look after the prisoner and to see that he is safely delivered to the point of destination, it necessarily follows that he had a right to take the prisoner with him.

JUDGE WHITE DELIVERED THE OPINION OF THE COURT.

This action was begun in the Knox Circuit Court by the appellee against appellant for damages. The cause of complaint and damages alleged by plaintiff are: That in June, 1894, appellee was the sheriff of Knox county; that as such officer he at that time had a prisoner in his charge—a negro lunatic. The appellee had by proper orders and judgment of a court of competent jurisdiction been directed to take the

negro lunatic to the asylum at Lexington, Ky.; that while executing this order and judgment appellee bought two first-class tickets, one for himself, and one for the lunatic, from Barbourville to Winchester, over appellant's road; that from Barbourville to Livingston appellee and his prisoner occupied the smoking car for white persons, but that from Livingston, where he changed trains to Richmond, appellee was compelled by the conductor in charge of the train to ride with the prisoner in the coach set apart for colored persons exclusively, as by the laws of Kentucky they are required to do. For this alleged injury and insult he claimed judgment in damages.

To, this petition the appellant answered, after a demurrer to same had been overruled. This answer is a general and special denial of all the facts alleged, except that appellee was the sheriff in charge of a prisoner and bought the two tickets as alleged, denied that appellee was compelled to ride in the colored coach, or requested so to do by any officer or agent of appellant.

The issue thus presented was tried before a jury and they returned a verdict for appellee for $1,250, and judgment was rendered thereon, and, after appellant's motion for new trial had been overruled, it has appealed to this court. The decision of this case requires a construction of the separate coach law, being the act of May 24, 1892, and embraced by sections 795 to 801 of the Kentucky Statutes.

Section 795 reads, so far as applicable: "Any railroad or corporation . . . are hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of rail-

road. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach, within the meaning of this act, and each separate coach or compartment shall bear in some conspicuous place appropriate words, in plain letters, indicating the race for which it is set apart."

Section 796 provides that railroad companies shall make no difference or discrimination in the coaches set apart for white and colored passengers.

Section 797 provides a penalty against the railroad in the sum of from $500 to $1,500 for each failure.

Section 798 gives the circuit court jurisdiction of the offenses.

Section 799 provides: "The conductors or managers on all railroads shall have power, and are hereby required, to assign to each white or colored passenger his or her respective car or coach or compartment, and should any passenger refuse to occupy the car, coach or compartment to which he or she may be assigned by the conductor or manager, said conductor or manager shall have the right to refuse to carry such passenger on his train, and may put such passsenger off the train. And for such refusal and putting off the train, neither the manager, conductor nor railroad company shall be liable for damages in any court."

"Section 800. That any conductor or manager on any railroad who shall fail or refuse to carry out the provisions of section 799 shall upon conviction be fined not less than $50 nor more than $100 for each offense."

"Section 801. The provisions of this act shall not apply

to employes of railroads or persons employed as nurses or officers in charge of prisoners."

The precise question to be here determined is the effect of the clause in section 801, reading: "The provisions of this act shall not apply to  .  .  .  officers in charge of prisoners."

The evident intention of the Legislature in the enactment of this law was to separate the two races in their travel on the railroads throughout the 'State, as is likewise the policy in the schools, and at the same time providing that the colored passenger may have equal rights.  But it was recognized that to make this separation of the races absolute and in all cases would be impracticable as to the railroad employes. If the white man must keep out of the colored coach and the colored man keep out of the white coach in all cases, there would be two sets of trainmen on one train.  So the exception was made in behalf of the employes.  They may of course go in either coach.  Again, recognizing the necessity in a great many cases that persons traveling should be accompanied by a nurse, this nurse was included in the excepting clause.  The law not applying to the nurse she may go with her charge.  This was of course done in order that the child or invalid might have the services of the nurse on the journey.  This nurse can occupy the car assigned to her race or to the one of the child or invalid.  But there is the third class of persons who are also excepted from the provisions of the act, viz., "an officer in charge of a prisoner."

The exception is not to the prisoner, but to the officer, and, being connected in the same sentence with the exception in favor of the employes and of nurses, we conclude that the

same rule applies to the officer in charge of a prisoner, he may occupy either car. He may occupy the car assigned to his race or he may occupy the car of the race of the prisoner, but that the prisoner must in all cases occupy the car assigned to his race. The exception is not made to the prisoner or for his benefit, but to the officer, that he may accompany the prisoner and detain him.

The testimony of the appellee himself on the trial as presented by this record shows that there was no indignity offered him except that he was told that the negro lunatic must ride in the colored coach, and that the conductor told appellee that he could leave the negro lunatic in the colored car and sit himself in the white car and leave the door between the two compartment open so that he could guard the prisoner; this appellee declined to do, for the reason that he feared the negro would jump out of the window, and appellee refused to be separated from his prisoner.

We are of opinion that under the law the conductor was compelled to assign the negro lunatic to the car set apart for colored persons, and, if appellee refused to separate from his prisoner, he had a right to ride in that car or he had a right to occupy the other car, as the conductor informed him he could do. It seems to us that the conductor did only as the law provided he should do, and, in our opinion, these acts did not render appellant liable, and it, therefore, follows that, as by appellee's own showing, he was not entitled to recover, the peremptory instruction should have been given to find for defendant.

Wherefore, the judgment is reversed and cause remanded, with directions to award appellant a new trial and for further proceedings consistent with this opinion.