## GULF, C. & S. F. RY. CO. v. SHARMAN.

(Court of Civil Appeals of Texas. Austin. June 18, 1913.)

CARRIERS (§ 266*) — PASSENGERS — DISTRIBUTION OF RACES—DISCRETION OF CONDUCTOR.

Under Rev. Civ. St. 1911, arts. 6746–6753, prohibiting either white or negro railroad passengers from riding in the car provided for the other race, and giving conductors authority to refuse a passenger admittance to any coach in which he is not entitled to ride, and making it his duty to remove any passenger not entitled to ride in a coach because of his race, a conductor had the discretionary power to determine whether a negro, in charge of a white sheriff, should ride with the officer in the coach for whites, or whether the officer and his prisoner should ride in the colored coach; and the railroad company would not be liable for the conductor's act in compelling the officer and negro to ride in the colored coach.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1049–1055; Dec. Dig. § 266.*]

Appeal from Liberty County Court; I. B. Simmons, Judge.

Action by E. W. Sharman against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. Marshall & Harrison, of Liberty, for appellee.

---

## Findings of Fact.

JENKINS, J. Appellee alleged that on September 21, 1911, he boarded one of appellant's trains at Milvid with a negro prisoner, he being the sheriff of Liberty county; that both himself and the negro prisoner were entitled to transportation to destination, which was Beaumont on that road; that he had a pass upon said road, and paid the transportation of said prisoner; that he entered what is known as the smoking car for whites, and that the conductor, auditor, and porter of appellant refused to allow the said negro prisoner to ride with appellee in said car, but forcibly took away from him said prisoner, and removed him by physical force to the negro coach, thereby forcing appellee to follow said prisoner into said coach, and to ride in said negro coach, by which action he was greatly humiliated and mortified, to his damage $999.99. There was a verdict and judgment for appellee for the sum of $500. There is no material conflict in the evidence, which shows that appellee was the sheriff of Liberty county, and was on his way to Milvid to receive a negro prisoner from an officer who there had him under arrest, and who had been notified to have said prisoner at the depot, and that in order to avoid delay he paid the auditor transportation from Milvid to Beaumont before arriving at Milvid; that he received his prisoner at Milvid, who was a negro, and was charged by affidavit with murder, handcuffed, and took him into the smoking car for whites; that thereafter the conductor, with whom he was acquainted and on friendly terms, approached him and asked him to take the negro to the negro coach, saying that the law did not allow negroes to ride in the coach for whites. Appellee replied that he was the sheriff of Liberty county, which fact was known to the conductor, and that the negro was his prisoner, charged with murder, and that he had the right under the law to keep him in the seat with him in the coach for whites. The conductor replied that he did not so understand the law; but, on the contrary, that it was his duty under the law to prevent said negro from riding in the car with the whites, and that the negro must go into the negro coach; that he would place the negro just inside the partition, and leave the door open, and that appellee, who was sitting next to the partition, could see and watch his prisoner. Appellee replied that it was his duty to stay with his prisoner, and that if the negro went he would go with him. The conductor said that the negro must go into the negro coach, and thereupon, appellee protesting, he and the negro and the conductor went into the negro coach. The auditor and the porter were in the car, and near appellee and the conductor, when this conversation was going on, but had not been asked to be there by the conductor, and took no part in the conversation. Appellee also alleges that there were a number of negro men in the coach, and that he was afraid his prisoner would be rescued by them. After riding in the negro coach three or four miles, the conductor, who says that he saw that appellee was angry, approached him and said to him, while it was a violation of the law to allow a negro to ride in a coach for whites, that he would take the responsibility upon himself of violating the law, and that appellee might take his prisoner into the coach for whites, if he so desired. Appellee replied that he had been compelled to go in there, and that he was not going out. After appellee reached Beaumont, he took the Texas & New Orleans road with his prisoner to Liberty, and on this road he rode in the negro coach. He says that he did not notice that it was the negro coach when he entered, but afterwards discovered that it was, and did not leave the coach.

## Opinion.

The laws of this state (R. S. 1911, arts. 6746 to 6753) require railway companies to furnish separate coaches for white and negro passengers, and prohibits either race from riding in the car provided for the other race, and provides that conductors "shall have the authority to refuse any passenger admittance to any coach or compartment in which they are not entitled to ride under the provisions of this law; and the conductor in charge of the train * * * shall have authority, and it shall be his duty, to remove from a coach * * * any passenger not entitled to ride therein under the provisions of this chapter, and upon his refusal to do so knowingly shall be punished as provided in the Penal Code of this state." It is the contention of appellant that under the provisions of this law, the conductor was required to remove said negro from the coach provided for whites. Such is the imperative command of the statute; but there is another statute which requires peace officers to safely keep and guard their prisoners. These statutes must be taken together. Like the oft-quoted instance of the surgeon who bled the man that fell down in the street with a fit, and was prosecuted for violating the law against drawing blood in the street, we think the "rule of reason" should apply to this statute, and that the circumstances of a sheriff having a prisoner in charge creates an exception to the law. If a conductor should strictly enforce this law, he could neither allow the sheriff to take his prisoner into the coach for whites, nor allow him to ride in the coach for negroes; the sheriff being a white man and the prisoner a negro. Nevertheless the law does intend that the races should be separated where practical; and in this instance, we think the conductor had the discretion to determine whether the negro should ride with the officer in the coach for whites, or the officer with his prisoner in the coach for negroes, and that in determining that the latter course should be pursued

he was in the exercise of his legal discretion, which, under the facts of this case, was not abused. While the statute, in terms, equally protects whites from the presence of negroes, and negroes from the presence of whites in their respective coaches, yet it is well known that the leading purpose of this statute was to protect the white race from the presence of negroes while traveling on trains.

We can see no reason why a sheriff should feel humiliated by being compelled to ride in the negro coach with his prisoner, when the same was necessary in the discharge of his legal duties. There are many disreputable places in which a man who claims to be respectable would feel mortified and humiliated, if found therein, except in the discharge of duty, and yet no sheriff would hesitate to enter such places when necessary to discharge his duties. There was no evidence at all of any reasonable apprehension on the part of the sheriff that there would be an attempt to rescue his prisoner; and this is evidenced by the fact that he remained in the coach after he was told by the conductor that he could take his prisoner back into the coach for whites. It is further apparent that he was not humiliated by finding himself by mistake in the negro coach on the Texas & New Orleans road. Perhaps he was angry at not having his way in having the negro ride with him in the coach for whites; but if he was humiliated by being compelled (if such was the fact), in order to safely guard his prisoner, to ride in the negro coach, appellant is not responsible for such humiliation.

For the reasons above given, this case is reversed and rendered in favor of appellant.

Reversed and rendered.