J. W. HUFF v. NORFOLK SOUTHERN RAILROAD COMPANY.

(Filed 22 March, 1916.)

1. Carriers of Passengers—Separate Accommodations—Race Division—Statutes—Commerce—Constitutional Law.

Revisal, sec. 2619, requiring separate accommodations for the white and colored races, expressly excludes from its operation, among other things, officers or guards transporting prisoners and prisoners being

transported; and where a white sheriff carrying as a prisoner a colored man on the train brings his action upon the sole ground 'that he was required to ride in the coach provided for colored people, the construction of the statute in its relation to the Federal laws, or those regarding interstate commerce, does not arise.

## 2. Same — Equal Accommodations — Rules and Regulations — Conductors — Sheriffs.

Irrespective of statute, a common carrier of passengers may make and enforce reasonable regulations for governance and well ordering of its trains, and the power extends to a separation of the races on account of color, when equal accommodations are provided for all persons paying the same rate of fare; and upon occasion, the conductor of the train may reasonably act without such rules when the exigency of any particular instance requires it, having due regard for the rights of the passenger more directly concerned and also for the comfort and convenience of the other passengers. Hence, where the conductor of the train requires a white sheriff to go into the coach provided for colored people with a colored prisoner in his custody, traveling with him on the train, without any evidence that he did so in a harsh or abusive manner, or that the accommodations furnished were unequal to those of the other coach, damages sought by the sheriff in his action on that ground alone will be denied as a matter of law.

APPEAL by plaintiff from *Bond, J.,* at October Term, 1915, of CRAVEN.

Civil action to recover damages for alleged wrongful conduct of defendant and its employees in compelling plaintiff, a white man, to ride in the coach set apart for colored passengers.

Among other things, the evidence tended to show that on 11 July, 1913, plaintiff, a white man and deputy sheriff of Craven County, having in charge a colored prisoner, handcuffed, bought tickets for himself and prisoner at Norfolk, Va., to New Bern, N. C., boarded defendant's train running between the two places and started into the car assigned for white passengers; that he was directed by the conductor not to take the prisoner into the car assigned for the use of the white passengers.

The plaintiff, testifying in his own behalf, said "the conductor forced him to ride in the car for colored people"; but when asked what he meant by the use of that expression, and to state just what occurred, the witness said: "When I started into the white passenger coach with the prisoner the conductor said: 'Hold on there; you can't ride in here. You will have to go into the colored car'; that the conductor acted very forcibly, and, by saying that, I mean only to say that he kept me from going into the white car by telling me to go into the colored car."

The evidence tended further to show that when the train neared Plymouth the prisoner jumped from the car and made a temporary escape; that the train was immediately stopped at the plaintiff's request, plaintiff alighting, found and recaptured his prisoner and took

him to New Bern on a later train. There is no testimony or claim, however, that having the prisoner in the colored car was in any way the cause of his escape, nor is the suit brought for that reason, which is, as stated, for wrongfully refusing to allow plaintiff to enter the car for white passengers with his prisoner and claimed to be in violation of section 2619, requiring carriers to provide separate accommodation for the different races.

At the close of the evidence, on motion, there was judgment of non-suit, and plaintiff excepted and appealed.

*Ernest M. Green for plaintiff.*
*Moore & Dunn for defendant.*

HOKE, J. While there is learned and forcible decision to the contrary, *Smith v. Tenn.,* 100 Tenn., 494, it seems to be the trend of opinion and the decided intimation of the Supreme Court of the United States on the subject that State legislation of this character may not extend to a case of interstate traffic. *Chesapeake and Ohio R. R. v. Ky.,* 179 U. S., 388; *Plessy v. Ferguson,* 163 U. S., 537; *Hall v. McCuir,* 95 U. S., 485; *Anderson v. Louisville and Nashville R. R.,* 62 Fed., 46; *State ex rel. Abbot v. Hicks,* 44 La. Criminal.

We are not called on, however, to. decide this question on the present appeal nor to construe our statute in direct reference to it, for the reason that the law itself, Revisal, sec. 2619, after requiring all railroad and steamboat companies engaged as common carriers in the transportation of passengers for hire to provide separate and equal accommodations for white and colored passengers, contains provisos as follows:. *"Provided,* that this shall not apply to relief trains in cases of accident, to Pullman and sleeping cars or through or express trains that do not stop at all stations, to negro servants attendant on their employers, to officers or guards transporting prisoners, nor to prisoners so transported."

By the express terms of the statute, therefore, the present case. is excluded from its operation, and must be determined as unaffected by direct statutory regulation. Considered, then, in that aspect, it is established by numerous decisions of our State courts that, in the absence of any statute, a common carrier may make and enforce reasonable regulations for the governance and well ordering of their trains, and the power extends to a separation of the races on account of color, the carrier providing equal accommodation for all persons paying the same rate of fare.

In an able, well reasoned case from Pennsylvania, the principle and the basic reasons for it are stated by *Justice Agnew,* in part, as follows:

"The right of the carrier to separate his passengers is founded upon two grounds: his right of private property in the means of conveyance

and the public interest. The private means he uses belong wholly to himself, and imply the right of control for the protection of his own interest, as well as the performance of his public duty. He may use his property, therefore, in a reasonable manner. It is not an unreasonable regulation to seat passengers so as to preserve order and decorum, and to prevent contacts and collisions arising from natural or well-known customary repugnancies which are likely to breed disturbances by a promiscuous sitting. This is a proper use of the right of private property, because it tends to protect the interests of the carrier as well as the interests of those he carries. If the ground of regulation be reasonable, courts of justice cannot interfere with his rights of property. The right of the passenger is only that of being carried safely, and with a due regard to his personal comfort and convenience, which are promoted by a sound and well regulated separation of passengers. An analogy and illustration are found in the case of an innkeeper, who, if he have room, is bound to entertain proper guests; and so a carrier is bound to receive passengers. But a guest at an inn cannot select his room or his bed at pleasure; nor can a voyager take possession of a cabin or a berth at will or refuse to obey the reasonable orders of the captain of a vessel. But, on the other hand, who would maintain that it is a reasonable regulation, either of an inn or of a vessel to compel the passengers, black and white, to room and bed together? If a right of private property confers no right of control, who shall decide a contest between passengers for seats or berths? Courts of justice may interpose to compel those who perform a business concerning the public, by the use of private means, to fulfill their duty to the public—but not a whit beyond." *Westchester, etc., Ry. v. Miles,* 55 Pa. St., 209.

The position so stated has been approved and applied in many well considered cases on the subject, as in *Commonwealth v. Power Co.,* 48 Mass., 596; *Bass v. R. R.,* 36 Wisc., 495; *Bowie v. Birmingham Ry.,* 125 Ala., 397; *Vedder v. Fellows,* 20 N. Y., 126; *Brown v. Memphis R. R.,* 7 Fed., 51; and has been fully recognized in our own State in *Britton v. R. R.,* 88 N. C., 536. And where the right to exercise such power on the part of the carrier and to make general rules on the subject would clearly exist, in the presence of emergencies or exceptional conditions not covered by any rule, the conductor in control of a train and charged with the duty of looking after the comfort and convenience of his passengers must be allowed reasonable authority for the well ordering of his train. It is better always to have established rules, because, made with greater deliberation, they may the better serve to inform the passenger of his rights in advance and thus have a tendency to prevent altercations and avoid unseemly friction; but it is impossible to frame rules that are efficient and applicable to every case

that may arise in the progress of a train. The conductor, as the representative of the company on the ground, must, of necessity, be allowed to deal with such conditions. It is a power to be exercised always with sound judgment, with due regard to the rights of the passengers more directly affected, and under a sense of obligation to preserve order and "proper decorum." As said in one of the cases above cited, *Bass v. R. R.*: "The regulations must be reasonable and reasonably enforced," a statement of the principle recognized with us in *Mason v. Ry.,* 159 N. C., 183.

Speaking to the position and powers of a conductor, in Baldwin on American Railroad Law, the author has said: "He holds, however, somewhat an analogous position to that of shipmaster. The owners of a railroad have put him in charge of the persons and property on board its cars. In case of emergency, when prompt action, if any, must be taken to protect the interests confided to his care, his ordinary powers may become greatly enlarged. A conductor, in the usual execution of his office, is more a servant than an agent; in emergencies, he may become more an agent than a servant. His ordinary powers as a servant are so large as frequently to subject the company to liability for his wrongful acts. From the necessity of the case, he represents the corporation in the control of the engine and cars, the regulation of the conduct of his passengers as well as the subordinate servants of the corporation and the collection of fares."

On careful consideration of these general principles, we are unable to see that the rights of the plaintiff in the cause have been violated by defendant company or its employees. Under his contract of carriage he was entitled to be transported to his destination and afforded sufficient and equal accommodation during his journey; but he had no right to roam at will over the train or to take his seat with his handcuffed colored prisoner in the car set apart for white persons, regardless of the comfort and convenience of the other passengers and contrary to the directions of the conductor given in the reasonable exercise of his authority. In *Hall v. McCuir, supra,* a suit by a colored woman against the owner of a steamboat for refusing her accommodations on account of her color in the cabin specifically set apart for white persons, *Associate Judge Clifford,* on this subject, in his concurring opinion, said: "Where the passenger embarks without making any special contract, and without knowledge as to what accommodations will be afforded, the law implies a contract which obliges the carrier to furnish suitable accommodations, according to the room at his disposal; but the passenger in such a case is not entitled to any particular apartments or special accommodations. Substantial equality of right is the law of the State and of the United States; but equality does not mean identity, as, in the nature of things, identity in the accommodation

afforded to passengers, whether colored or white, is impossible unless our commercial marine shall undergo an entire change. Adult male passengers are never allowed a passage in the ladies' cabin, nor can all be accommodated, if the company is large, in the staterooms. Passengers are entitled to proper diet and lodging; but the laws of the United States do not require the master of a steamer to put persons in the same apartment who would be repulsive or disagreeable to each other.

"Steamers carrying passengers as a material part of their employment are common carriers, and as such enjoy the rights and are subject to the duties and obligations of such carriers; but there was and is not any law of Congress which forbids such a carrier from providing separate apartments for its passengers. What the passenger has a right to require is such accommodation as he has contracted for, or, in the absence of any special contract, such suitable accommodations as the room and means at the disposal of the carrier enable him to supply; and in locating his passengers in apartments and at their meals it is not only the right of the master, but his duty, to exercise such reasonable discretion and control as will promote, as far as practicable, the comfort and convenience of his whole company."

In the absence of statutory or general regulations by the company, the question, under the facts and circumstances of each case, must be made to depend on "whether the action complained of was in the reasonable exercise of authority possessed by the conductor for the governance and well ordering of his train, and whether such authority was enforced in a reasonable manner." Where the question permits of debate among men of fair minds, such a question in this jurisdiction must be referred to the jury; but where the case is perfectly clear, it must then be determined as a question of law. *Holden v. Royall,* 169 N. C., 676; *Claus v. Lee,* 140 N. C., 552.

In this instance there is no evidence that the directions of the conductor were given in a rude or offensive manner, and, so far as appears, they were obeyed without present protest. There is no claim or suggestion that plaintiff and his prisoner were not provided physically with the equal and sufficient accommodations contemplated by his contract, nor is there suggestion that the escape of the prisoner was in any wise due to his being placed in the car assigned to colored people or that such an escape was thereby in any way threatened, and, under all the facts and circumstances of this case, we concur in his Honor's view, that no actionable wrong was done the plaintiff, and the judgment of nonsuit is

Affirmed.