## ILLINOIS CENTRAL R. CO. v. COX.

[96 South. 685.   No. 23362.]

1. CARRIERS.   *Rule requiring passengers to exhibit tickets before boarding train held reasonable and enforciable; civil enforcement of rule requiring passengers to exhibit tickets before boarding train held not actionable.*

   A carrier of passengers may adopt and enforce a rule requiring passengers to exhibit tickets or transportation before entering its trains. Such rules are reasonable and tend to benefit both the passenger and the carrier in preventing mistakes and disputes. The fáct that a servant of the carrier insists on compliance with the rule, in a manner not insulting, does not afford an item or element of damage to a passenger, and where such a rule is adopted it is error to instruct the jury in a suit for damages that it was the duty of the carrier to admit the passenger on presenting himself if he had a ticket, when he refused to exhibit the ticket when requested to do so.

2. CARRIERS.   *Sheriff having negro prisoner may be required to place prisoner in compartment for colored passengers.*

Under the statute of Tennessee requiring a carrier to provide separate but equal accommodations for white and colored passengers, and making no provision or exceptions in favor of officers having prisoners in their charge, the carrier may require the sheriff to carry and keep his negro prisoner in the coach or compartment for colored passengers, and is not liable for damages at the suit of the white officer for so doing if the conductor or servant in charge does so without insult or undue violence.

3. CARRIERS. *Enforcement of rules or law as to separating races in cars by offensive language or undue violence held actionable.*

Where the law authorizes or requires a carrier to provide separate but equal accommodations for the white and colored races, and a servant in enforcing such rules or laws uses insulting and offensive language to the passenger, or uses undue violence in enforcing the same, the carrier is liable to the passenger for actual and punitive damages.

4. CARRIERS. *Refusal of instruction that if carrier's conductor courteously and reasonably forced white officer with colored prisoner to ride in colored compartment, to find for defendant, held erroneous.*

In a damage suit against a carrier for placing a white officer with a negro prisoner in the compartment for negro passengers, it was error to refuse the defendant an insturction telling the jury that if the conductor of the defendant requested the plaintiff to remove his negro prisoner into a compartment for colored people and after some discussion with the conductor, whose duty it was to see that the laws of the state were complied with in reference to negroes riding in white compartments on the trains, plaintiff complied with the request and moved the prisoner into the colored compartment, and that he and his prisoner practically had the compartment to themselves, and that the conductor was as courteous and reasonable as the plaintiff and the circumstances permitted in requiring such removal, to find for the defendant where the testimony for defendant supported such hypothesis.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Action by A. C. Cox against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*May, Saunders & McLaurin,* for appellant.

The court erred in refusing the peremptory instruction requested by the defendant. It will be remembered that the declaration charged three elements of alleged wrong and injury. (a) It is claimed that the train porter was insulting in demanding of the plaintiff that he show his tickets before boarding the train. The plaintiff's own, testimony completely disposed of that claim. He testified that he refused to do, thereby himself violating a reasonable and lawful regulation of the railroad company, and walking rough-shod over it. And the plaintiff further testified that the negro porter was not insulting but just talked like any other negro. Of course it was not an insult for the porter to require this mighty sheriff to show his tickets, and despite the demand, which was politely made, this same mighty man refused to exhibit the tickets for himself and prisoner and passed on. The humble servant of the railroad company did his duty in demanding the tickets, while this guardian of the law ignored it and brushed aside this lowly representative of the railroad company who was placed there to perform a duty in enforcing a regulation designed as much for the protection of the public as for the railroad. So this element of the case failed utterly for want of proof and should have been excluded from the consideration of the jury.

(b) It was claimed in the declaration that the conductor was insulting to the plaintiff; that he said to the plaintiff, "get out of this car with your negro prisoner and move that damn stuff out of here," or words to that effect. This was denied by the conductor and three other witnesses, two of whom were passengers. But conceding for the sake of argument, the truth of this testimony of the conductor, we submit it did not amount to insult, but was merely brusqueness or crudity. *Railroad Co.* v. *Gill,* 66 Miss. 39; *K. C. M. & B. R. R. Co.* v. *Fite,* 67 Miss. 373. In the instant case no actual damages were shown by the plaintiff and clearly he was not entitled to exemplary damages.

In the case of *I. C. R. R. Co.* v. *Brookhaven Machine Co.*, 71 Miss. 663, in passing upon a similar question, this court, speaking through Judge COOPER, had this to say: "It was also erroneous to submit to the jury the right of the plaintiff to recover punitive damages. There is no evidence upon which a verdict for such damages could be sustained. Mr. Chrisman and the agent of the defendant company appear not to have been personally friendly, and it may be that the agent was not as polite as he would have been in his dealings with others, but mere brusqueness of the agent, not amounting to insult, is no ground in law for the infliction of punitive damages against his principal."

(c) Lastly, the plaintiff's chief complaint, and the real gravamen of his suit, was that he was compelled to ride in the negro coach with his prisoner. The question for determination here is this: Did the conductor have the right to require the sheriff with his negro prisoner to leave the coach set apart for white passengers and go into the coach set apart for negroes, and conversely, did the sheriff have the right to take his negro prisoner into the coach set apart for white passengers?

While the case is one of first impression in Mississippi, happily for us the exact question has been before several of our sister states of the South and they have, so far as we can find, uniformly held that the conductor either had the right or was under duty, in such cases, to require the sheriff to take his negro prisoner (passenger) into the negro coach, and that the sheriff had no right to take his negro prisoner (passenger) into the coach set apart for whites. *Huff* v. *Norfolk Southern Railroad Co.*, 88 S. E. 344, L. R. A. 1916E, page 278; *Gulf C. & S. F. R. Co.* v. *Sharman* (1913), — Tex. Civ. App. —, 158 S. W. 1045; *Mobile & O. R. Co.* v. *Spenny* (1914), — Ala. —, 67 So. 740; *Louisville & N. R. Co.* v. *Catron* (1897), 102 Ky. 323, 43 S. W. 443, cited in note in 2 L. R. A. (N. S.) 1108. We can add nothing to the reasoning employed by the courts in the cases from which we have quoted.

In the absence of a statute expressly dealing with a case of this character, the most that could be urged for the appellee in this case, is that the matter is one resting wholly in the discretion of the conductor, and when he exercised that discretion, no complaint can be sustained against the company, and that it was proper for the conductor to require the sheriff and his negro prisoner to go into the negro coach, is clearly established by the quoted decisions.

*Everett & Forman,* for appellee.

"A railway company impliedly warrants that its engineers, conductors, and other employees, engaged in running its trains are possessed of due skill, and are competent and faithful, and is under all circumstances liable for any injury occasioned by the misconduct, rashness, or negligence of such persons; and where the injury is caused by the gross negligence or wanton and willful misconduct, it is liable for exemplary damages." *New Orleans & C. R. Co.* v. *Allbritton,* 39 Miss. 242; *Memphis & C. R. Co.* v. *Whitfield,* 44 Miss. 466; *Yazoo & M. V. R. Co.* v. *Fitzgerald,* 50 So. 631. The last case above given is exactly in point where for less insult one thousand five hundred dollars damages was upheld and approved, for insult merely. *Railroad Co.* v. *Moreland,* 104 Miss. 312, 324.

In the case last above cited a much less insult and wrong was held to entitle the injured party to punitive damages. There the cases here relied on by attorneys for appellant were appealed to in vain, the court evidently regarding them wholly inapplicable to a case in this court. *Railway L. & P. Co.* v. *Lowry,* 79 Miss. 431, 436-7.

In the last case above mentioned, the court distinguished this class of cases and said of that case, much less grievous: "It has its classifications with the cases of *Railroad Co.* v. *Hurst,* 36 Miss. 660, 74 Am. Dec. 785; *Higgins* v. *Railroad Co.,* 64 Miss. 80, 8 So. 176; *Heirn* v. *McCaughan,* 33 Miss. 17, 66 Am. Dec. 588; *N. O. J. & C. R. R.* v. *Hurst,* 36 Miss. 660.

In case last above mentioned a verdict for four thousand five hundred dollars, for much less injury was sustained. The authorities were ably reviewed and fully cited. From them the court draws the following conclusions: "The law has not intrusted the court with a discretion to estimate damages, but has devolved the power on a jury, as a matter of sentiment and feeling to be exercised by them according to their sound discretion, duly weighing all the circumstances of the case, and considering the state, degree, quality, trade, or profession, as well of the party injured, as of him who did the injury. Judges, therefore, should be very careful how they overthrow verdicts given by twelve men, on their oaths, on the ground of excessive damages. Per PARSONS, C. J., Coffin v. Coffin, 4 Mass. 1, 3 Am. Dec. 189; Simpson v. Pitman, 13 Ohio 365; Fisher v. Patterson, 14 Ohio, 418; Clark v. Pendleton, 20 Conn. 495; Sedgwick on the Measure of Damages, 39 et seq., and authorities cited.

The cases, both English and American, while fully admitting the power and discretion of the court, uniformly concur in the doctrines above laid down. "Our own court has sanctioned the same doctrine, in Bell v. Morrison, 27 Miss. 68; Vicksburg & J. R. Co. v. Patton, 31 Ib. 156, 66 Am. Dec. 552; Heirn v. McCaughan, 32 Ib. 17, 66 Am. Dec. 588."

II. The statutes requiring separation of races on passenger trains is constitutional and is a reasonable exercise of the police power of the state. Its violation may furnish the basis of damages, but it is not the cause of action relied on in this suit. A. & V. R. R. Co. v. Morris, 103 Miss. 511, 60 So. 11. In that case a verdict for fifteen thousand dollars for humiliation of having to occupy a sleeper with negroes was reduced to two thousand dollars. However, the court did not allow under instructions in this case damages except for insult and humiliation, assessed by the jury for one thousand four hundred ninety-five dollars.

III.   The first instruction given appellee only authorized a finding for him, if the jury believed, "the conductor in charge of the train on which A. C. Cox was traveling with his prisoner, demanded in a rude, offensive and insulting manner that said A. C. Cox and his said prisoner move into a compartment on said train reserved for negro passengers and there remain until he arrived at Memphis, Tenn., or else to suffer himself and his prisoner to be ejected from said train and that thereby said Cox, in such manner was forced to ride with his prisoner in a compartment designed and used for negro passengers, then you will find for the plaintiff, A. C. Cox, and assess his damages whatever sum you believe to be just and right from the testimony in this case, and may in their discretion include in such amount punitory damages, not in all to exceed two thousand nine hundred ninety dollars." This instruction, neither in its terms nor amount, falls within the letter or spirit of the case relied on by opposing counsel.   *Gulfport & Miss. Coast Traction Co.* v. *Keebler,* 94 So. 795.

VI.   Under the circumstances of this case we deem it unnecessary to go into the holdings of various states on the separate compartment law.   Those statutes vary, as do the ruling of courts on them, one court holding under the peculiar wording of the statute that a sheriff would be authorized to ride in a negro coach with a negro prisoner and others, just as the court held in this case, that the law had no application to sheriffs and negro prisoners, such cases to be governed by the particular circumstances.   Here we rely upon the insult and abuse and our right to detail the places and circumstances under which the injuries were inflicted, regardless as the instruction states of separate compartment laws.

VII.   Although the evidence of the negro porter proves that the rules of the company required him to politely ask to see tickets, but that he was not to have any fuss with passengers about getting on the train, but merely report it to the conductor and the negro, according to ap-

pellee's evidence forbade him to get on the train, after he had made full explanation, the court gave, by instruction No. 9 for defendant, that the regulation requiring showing of tickets was a reasonable one. Therefore the refusal of No. 5 on the same point, but not applicable before the jury was properly refused.

VIII. Instructions 7 and 10, listed among the refused instructions are substantially the same, slightly varying in verbiage. Both announce the doctrine that the conductor's duty under the laws of Tennessee, was to see that the laws of Tennessee were enforced "with reference to negroes riding in white compartments on the train." The tenth instruction says if "plaintiff was requested to move his negro prisoner into department for colored people on the same coach" etc., there was no evidence of such request as thus stated, applicable to the negro only. Therefore the refusal was proper.

Conclusion. We submit that under the facts and the law of this case, the jury were amply justified in rendering a verdict for one thousand four hundred ninety-five dollars, and that the judgment should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal from a judgment for one thousand four hundred ninety-five dollars against the appellant in favor of the appellee for alleged insulting language of a conductor and the act of the conductor in forcing the appellee to place a negro prisoner in his custody with the appellee in the colored compartment of the passenger train being operated in the state of Tennessee. The appellee had gone to East St. Louis for a negro prisoner charged with murder and was carrying him back to Sunflower county, Miss., for trial on said charge. He boarded the passenger train of the appellant at East St. Louis and traveled to Fulton, Ky., where it was necessary to change cars for Memphis, Tenn. The plaintiff had a ticket from East St. Louis to Shaw, Miss. On changing cars at Fulton, Ky.,

the plaintiff had his baggage and the negro's baggage in his hands. The negro was handcuffed and legironed, and as they approached the train to enter, the negro porter demanded to see the tickets under the rule of the company requiring passengers to exhibit their tickets before boarding trains. Plaintiff refused to exhibit his ticket and was told by the negro that he could not board the train without exhibiting his ticket, but the plaintiff proceeded to and did board said train without exhibiting said ticket, and no effort was made by the negro porter to prevent his doing so. He carried his prisoner into the smoker of the white compartment and took his seat therein. Plaintiff testified that the conductor came through and demanded tickets, and he produced first-class tickets for himself and his negro prisoner; that thereupon the conductor pointed to his baggage in the bundle rack and told him to "get your damn stuff out of here, and get yourself out of this car;" that the conductor was very angry and said to the plaintiff "You won't do nothing right. You wouldn't show your tickets to the porter at the door. You won't do anything right." That the conductor's manner was very angry. That the plaintiff said, "Maybe you don't know who you are talking to." And the conductor said, "I don't give a damn who I am talking to, get yourself out of here." The plaintiff said, "I would like to have your name." That the conductor gave his name and gave the number of his train as No. 3. That plaintiff found out afterwards that it was No. 103, as posted on the schedule. That the conductor told plaintiff he had two choices: "You can take whichever one you want; it don't make a damn bit of difference to me which. You can either move into the other coach or I will stop the train and put you off." Plaintiff stated he went into the smoker for the colored people, that he could not leave his prisoner, that it was against the policy of the law to chain him to the seat, that plaintiff stepped back to the door and was getting the names of the other people, when the conductor said to him: "I told you to stay out of here. I put you out of here at one time, and

I told you to stay out of here." That he made two or three steps towards the plaintiff, and the conductor said to others in the car, "He is trying to impose himself on you, gentlemen, and because I wouldn't let him, he is trying to bring suit." To which plaintiff said, "You are mistaken about that," and started to give the conductor his card, and the conductor said: "I don't give a damn who you are. I don't know you and don't care who you are."

The conductor, the porter, and two passengers traveling on the said train were introduced by the defendant, and their version of the affair was that the conductor approached the plaintiff and the negro prisoner and said, "Tickets, please;" that the conductor then told the plaintiff he would have to carry the negro into the compartment for colored people, and that plaintiff remonstrated, and the conductor told him that he had to enforce the law, that he knew what the law was, and he would have to carry the prisoner into the colored compartment; that the conductor did not use violent or profane language nor an insulting manner toward the plaintiff; that he stated to the plaintiff when he offered his card that he did not care who he was, that he had put one sheriff off for refusing to carry his negro prisoner into the colored coach, and that he would have to put him (the plaintiff) off if he did not carry his prisoner into the colored coach.

The plaintiff states that when he went into the colored coach with his prisoner, several negroes crowded around the prisoner to find out what his trouble was, but they soon went out, except now and then some negro in the colored compartment would go into the smoker and smoke. The proof for the defendant was that the plaintiff practically had the compartment to himself throughout the trip.

The court granted the plaintiff instruction No. 1, which reads as follows:

"This court instructs the jury that if they believe from the evidence in this case that A. C. Cox, plaintiff, had first-class passage for himself and his prisoner over the

railroad of defendant from Fulton, Ky., to Memphis, Tenn., then it was the duty of the Illinois Central Railroad Company to give A. C. Cox courteous and ready admission to its train, on his offering himself for transportation, along with his prisoner, and to give him courteous transportation on said train to Memphis; and if you further believe from the evidence in this case that in disregard of the rights of A. C. Cox to such courteous transportation, the conductor in charge of the train on which A. C. Cox was traveling with his prisoner demanded in a rude, offensive, and insulting manner that said A. C. Cox and his said prisoner move into a compartment on said train reserved for negro passengers and there remain until he arrived at his destination at Memphis, or else to suffer himself and his prisoner to be ejected from said train; and that thereby said Cox, in such manner, was forced to ride with his prisoner in a compartment designed and used for negro passengers—then you will find for the plaintiff, A. C. Cox, and assess his damages whatever sum you believe to be just and right from the testimony of this case, and may, in their discretion, include in such amount punitory damages, not in all to exceed two thousand nine hundred ninety dollars."

This instruction No. 1 for plaintiff is assigned for error.

The court refused instruction No. 10 requested by the defendant, which reads as follows:

"The court instructs the jury for the defendant that if they believe from the evidence in this case that A. C. Cox, the plaintiff, boarded a passenger train of the defendant with a negro prisoner at Fulton, Ky., and was requested to exhibit tickets for himself and his prisoner by the train porter of the defendant, and he refused to do so, but entered the train with his colored prisoner and took seats with his prisoner in a white compartment of the train, and after the train reached the state of Tennessee, the plaintiff was requested to move his negro prisoner into a compartment for colored people on the same coach, and that after some discussion with the conductor of defendant's

train, who was in charge of the same and whose duty it was to see that the laws of the state of Tennessee were complied with in reference to negroes riding in white compartments on the train, plaintiff complied with the request and moved his prisoner into the colored compartment, and that he and his prisoner practically had said compartment thereafter unoccupied except by plaintiff and his negro prisoner from said point until the train reached the city of Memphis, in the state of Tennessee, and that the conductor of defendant's train was as courteous and reasonable as plaintiff and the circumstances permitted in requiring plaintiff to move his negro prisoner from one compartment to another of the same coach, and that said accommodations were comparatively the same, then it is your duty to find for the defendant, the Illinois Central Railroad Company."

The refusal of this instruction for the defendant was also assigned for error.

A number of other errors are assigned, including a request by the defendant for a peremptory instruction.

As we understand instruction No. 1, the right of recovery is based upon the assumption that it was the duty of the defendant to admit plaintiff as a passenger when he presented himself for transportation along with his prisoner, if he had transportation, without reference to the rule of the carrier requiring him to show his ticket; and also is predicated upon offensive and insulting language and manner alleged to have been used by the conductor to the plaintiff, and also upon the theory that the plaintiff had a right to ride in the white compartment with his negro prisoner and was forced by the conductor to enter and ride in the colored compartment.

The rule of the defendant requiring passengers to exhibit tickets before boarding a train is a reasonable rule both to the interest of the carrier and that of passengers. It serves to prevent passengers from getting on the wrong train by mistake, and protects the carrier from persons boarding the train without tickets or means of transporta-

tion, and tends to save trouble and disputes between the carrier and passengers. The evidence in the record wholly fails to show that the language of the porter was offensive or insulting, and this element of the suit ought not to have been submitted to the jury for consideration. The plaintiff was not injured in any way with reference thereto.

The plaintiff was entitled, of course, to recover damages for rude, offensive and insulting language and for the insulting demeanor of the conductor, if plaintiff's version of the transaction is accepted as the true one, and this on the facts of the record is the only element of damages for which the plaintiff may recover.

We do not think that any right of the plaintiff was violated by requiring the sheriff to take his negro prisoner into the compartment for colored passengers. The statute of the state of Tennessee under which this action arises contains no exception in favor of a sheriff with a prisoner, and all of the authorities, that we have found, hold in the absence of such exceptions in statutes, that either the carrier has the option to place them in the colored compartment, or that it is their duty so to do. The carrier, of course, is not responsible for the safe-keeping of a prisoner, and the sheriff has the option of either letting the prisoner remain in the colored compartment alone, or he may accompany him in such compartment under the legal necessity of securing the safety of the prisoner and preventing his escape.

As said in *L. & N. R. Co.* v. *Catron,* 102 Ky. 323, 43 S. W. 443, the conductor was required, by the provisions of the statute, to assign white and colored passengers to their respective coaches, and was empowered to eject from the train any one who refused to obey his directions; but nurses and officers in charge of prisoners were excepted from the provisions of the act. It was held in that case that—"The exception is not to the prisoner, but to the officer . . . in charge of a prisoner, he may occupy either car. He may occupy the car assigned to his race or he may occupy the car of the race of the prisoner, but that the prisoner must

in all cases occupy the car assigned to his race. The exception is not made to the prisoner or for his benefit, but to the officer, that he may accompany the prisoner and detain him."

In the Tennessee statute there is no exception in favor of the officer, and the exception, if made, must be made upon legal necessity. It was mandatory that the negro be assigned to the coach or compartment for colored passengers, but as the officer is required to attend the prisoner to insure his safety or to prevent his escape, he could ride in the colored coach out of legal necessity.

In the case of *Huff* v. *N. S. R. Co.*, 171 N. C. 203, 88 S. E. 344, L. R. A. 1916E, 278, the North Carolina court denied the right of the sheriff to recover damages where he was required to ride with his negro prisoner in the coach set apart for colored passengers.

In *Gulf, C. & S. F. R. R. Co.* v. *Sharman* (Tex. Civ. App.), 158 S. W. 1045, a sheriff, a white man, who boarded a train with a negro prisoner, was forced under protest to carry him into the negro coach, where he remained because of fear of the escape of his prisoner. The court held that the railroad company was not liable to the sheriff because the laws of the state required the railroad company to furnish separate coaches for the white and negro races and prohibited either race from riding in the car provided for the other race, and provided that the conductor shall have the authority to refuse any passenger admittance to any coach or compartment to which they are not entitled to ride under the provisions of this law, and providing punishment for the failure of the conductor to enforce this statute, but that there was another statute which required peace officers to safely keep and guard their prisoners; that the two statutes must be taken together and the rule of common sense should apply; and that the circumstances of the sheriff having the prisoner in charge creates an exception to the law. The court held there was no liability for forcing the sheriff to occupy the compartment set apart for colored people, saying:

"We can see no reason why a sheriff should feel humiliated by being compelled to ride in the negro coach with his prisoner, when the same was necessary in the discharge of his legal duties. There are many disreputable places in which a man who claims to be respectable would feel mortified and humiliated, if found therein, except in the discharge of duty, and yet no sheriff would hesitate to enter such places, when necessary to discharge his duties."

In *M. & O. R. R. Co.* v. *Spenny,* 12 Ala. App. 375, 67 So. 740, a white officer in charge of a negro prisoner boarded a train, and because of refusal to go with the prisoner into the colored coach, or to send the prisoner there and himself remain in the white coach if he wishes, was ejected. The court in holding that the conductor's action did not warrant a suit for damages against the carrier, said:

"If it be conceded that an exception must be recognized in the case of a white officer in charge of a negro prisoner, because of the right of the officer to use the public carrier in the discharge of his public duty in removing the negro prisoner and safeguarding him while en route, then it seems to me that a due regard for the legislative intent and object to be obtained in passing these segregation statutes, that I have above discussed, would leave the door of construction, in applying the 'rule of reason' to engrafting an exception on the statutes and making an application to the case in hand, open to but one conclusion; and that is, that the rule of the company, having reference to the separation of the races in conformity with the segregation statutes requiring a white officer having in charge a negro prisoner either to leave the prisoner in the compartment set apart for his race or to remain, if he so desires for the safe-keeping of his prisoner, in that compartment, is more reasonable as referred to and authorized by a construction of the statutes than the opposed view which engrafts an exception giving an officer the right to intrude a negro prisoner in a car or compartment set apart for the exclusive use of passengers of the white race."

It seems to us that where no exception is made in the statute in such cases, the more reasonable rule would be to assign the negro prisoner to the compartment for the negro race and to permit the sheriff to accompany him and remain therein with him on the theory that his legal duty called him there in carrying out such legal duty. This rule would come nearer carrying out the purposes of segregation of the races which is to preserve the peace upon common carriers than it would be to permit the carrying of a negro into a white coach or compartment. The proof in this case shows that the negro was offensive to the white passengers because of the strong odors emanating from his body, some of the passengers saying it was necessary to raise the windows.

We think, therefore, it was error to embody in the instruction the theory or hypothesis that he could recover damages for being forced to ride in the colored compartment and for that reason that instruction No. 1 for the plaintiff is error. We also think it was error to refuse the defendant instruction No. 10. The testimony of the defendant supported the hypothesis of the instruction and nothing was given the defendant that presented the hypothesis contained in this instruction. It was evidently refused upon the theory that the sheriff had the legal right to ride in the white compartment with his negro prisoner. As we hold that he did not have such right, the instruction should have been given.

We do not pass upon the other assignment because, for the reasons indicated, the judgment must be reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*